## Case No. 15,986a.

### UNITED STATES v. PAGE.

[9 Betts, D. C. MS. 57.]

District Court, S. D. New York. June 12, 1847.

SHIPPING — MASTER'S BOND FOR RETURN OF SEAMEN FROM FOREIGN VOYAGE — INTERPRETATION AND PERFORMANCE—EXCEPTIONS—SPECIAL VERDICT.

[1. The statutory bond given by the master to the United States when going upon a foreign voyage, to exhibit his crew list, and produce the persons named therein, to the first boarding officer on his return from the voyage, imposes upon him a duty not merely to receive them passively, and return them when willing, but requires him to exercise all his lawful authority for the purpose of bringing them back.]

[2. The exception in the statute and bond of the case of a seaman who "absconds," does not necessarily apply to the case of a deserter, or of one who leaves the ship openly; for in such case the seaman may be found and apprehended by the aid of the local authorities, and it is the master's duty to have this done.]

[3. In an action on such a bond there was a special verdict finding that one of the seamen was dissatisfied, applied to one of the foreign owners for discharge, and understood from the answer that his discharge was assented to, and that he "left the ship, going to sea, 13 miles out from Liverpool, and returned there in the steamboat which towed her out." Held, that the court could not construe this as a finding that the seaman "absconded," within the meaning of the bond, so as to relieve the master from liability.]

[4. Assuming that there is no difference between bonds at common law and statutory or official bonds, the master would not be exonerated from his covenant by merely showing physical inability, subsequently accruing on his part, to perform it; or that others, whose assent and concurrence were necessary, could not be prevailed upon or compelled to aid or permit its performance.]

[5. The exceptions enumerated in the statute and bond are persons who may be discharged abroad with the written consent of the consul, etc., or who may have died or absconded, or been forcibly impressed into other service. Held, that these express exceptions should be extended by construction to other cases of a like character. and that, as the master signed the bond in his official capacity, he should be considered as relieved from its performance, when by reason of sickness he becomes unable to perform his duties, and is relieved in a foreign port and superseded by another.]

PER CURIAM. The defendant [Pitkin Page] as master of the ship Hudson, on the 24th day of March, 1845, at Mobile, executed to the United States a penal bond in the sum of $400, conditioned, that he would exhibit his crew list and produce the persons named therein to the first boarding officer at the first port at which he should arrive, on his return from the foreign voyage then to be made, except persons who may be discharged abroad with the written consent of the consul, &c., or who may have died or absconded, or been forcibly impressed into other service. The declaration avers the for-

feiture of the bond and negatives the existence of facts forming an exception or excuse to the defendant.

On the trial of the cause, a special verdict was rendered by the jury which finds these facts: The execution of the bond by the defendant. That William W. Benson was named on the crew list, and was one of the crew and chief mate of the ship, and performed the voyage with the defendant from Mobile to Liverpool, where the ship arrived the 7th day of May, 1845, when the defendant left her, being unable, in consequence of sickness, to attend to his duties on board. That a new master was appointed to the command of the vessel in place of the defendant, and the said Benson continued on board, discharged the outward cargo and took in the return one. That Benson was dissatisfied in not having the command of the ship given him, and applied to one of the owners, then in Liverpool, to be discharged; and understood from the answer that his discharge was assented to, and left the ship, going to sea, 13 miles out from Liverpool, and returned there in the steamboat which towed her out. That the defendant was not on board the ship or steamboat at the time. On his return to Liverpool, Benson called on the defendant for the balance of wages due him and was told it should be paid him soon, and in four or five days after, the defendant paid him $16, in full of the amount due him for his services on board the ship. That Benson never appeared before the United States consul for his consent to his discharge, and was so paid off and discharged without the consent and knowledge of the consul. That the defendant did not come to the United States in the ship. She arrived in this port July 22, 1845, under command of the master appointed in his place, this being the first port at which she arrived after the execution of the bond. That the defendant left Liverpool after said ship sailed, and arrived at this port July 23, 1845, this being the first port at which he arrived after the execution of the bond. But neither the master of the ship nor the defendant has ever produced to a boarding officer here the said Benson. That on the 7th of August, 1845, Benson applied to the United States consul at London for relief as an American seaman, and was sent by the consul to New York in the ship Quebec, where he arrived in the month of September, 1845. The question upon this special verdict is whether the penalty of the bond can be enforced by the United States against the defendant. The undertaking has not been fulfilled to the letter, by the production of the seaman. Nor does the special verdict find specifically any of the facts named in the statute and condition of the bond, excusing the defendant from performance.

It is argued in behalf of the defendant that the jury has found facts which the court should interpret to be an absconding of the sailor from the ship. I do not say that it would be out of the province of the court to give the facts found a name and interpretation not expressed by the jury. But in the case of a special verdict, I apprehend the court is not at liberty to select between various imports of facts stated and give that adopted by it the effect of an express finding by the jury. Trial per Pais, 280.

The court will draw the legal conclusion from facts found by a special verdict. Butler v. Hopper [Case No. 2,241]. But if the legal affirmation or negative conclusion on the issue does not follow as a necessary consequence from the facts stated, no judgment will be pronounced upon it. State v. Duncan, 2 McCord, 129; Peterson v. U. S. [Case No. 11,036]; Stearns v. Barrett [Case No. 13,337]; [Barnes v. Williams] 11 Wheat. [24 U. S.] 415. The term "abscond," employed in the statute and bond, is not to be understood solely in its ordinary acceptation or strict etymological meaning; but in determining the sense in which congress intended to use it, regard is to be had to the connection and subject-matter to which it has relation. The provision has respect to the relation of the master of a vessel to his crew, and his control over them on a voyage from the United States to foreign ports and back to this country. That control is taken away and lost when a sailor "absconds," because in such a case the master loses the means of coercing the person of the seaman by force of his own authority, or aid of that of the country where his vessel is in port. Admitting that in this instance the seaman deserted the vessel, such desertion will not necessarily bring the master within the exception of the bond, for it is manifest that the absconding and desertion of seamen from vessels are not equivalent in all essential particulars. Desertion may be open and in defiance of the officers of the vessel, or may follow from continuing an absence forty-eight hours beyond the time of leave granted, and the sailor may all the while continue notoriously within reach of the authority of the master. The Bulmer, 1 Hagg. Adm. 163; The Jupiter, 2 Hagg. Adm. 229. Indeed, he may show himself daily alongside the vessel, but, continuing to refuse to enter on board and do duty, he will be subjected to the pains and consequences of desertion. This is because the penalty is personal to himself, and follows his misconduct and dereliction of duty. But such condition of the sailor could not exonerate the master from the obligation of his bond. He is not merely to receive seamen passively, and return them when willing and consenting to come home, but he assumes a positive obligation, and is bound to exercise all his lawful authority to fulfil it. The court cannot assume in this case that the sailor left the ship furtively, or, intend-

ing to elude the notice of the master, or that he any way concealed or secreted himself on board the steamboat, whilst that remained by the ship. It is equally consistent with the finding of the jury to infer that he went openly from the ship, declaring his purpose to leave her and return in the steamboat to Liverpool.

In the language of .the supreme court, if there was evidence sufficient in the special verdict from which the jury might have found the fact (that the seaman left the ship clandestinely and without the knowledge of the master) yet they have not found it, and the court cannot, upon a special verdict intend it. Barnes v. Williams, 11 Wheat. [24 U. S.] 416. In my opinion, therefore, the special verdict does not place the defendant within any of the exceptions named in the condition of the bond.

The remaining consideration is as to the legal effect and operation of the bond, and whether it is to be construed an absolute undertaking to restore the seaman, and must be pronounced forfeited unless one of the specifically excepted cases is proved to exist. Two considerations are involved in this inquiry: First, whether it became impossible, in a legal sense, for the defendant to perform the condition of the bond by reason of events subsequent to its execution; and, second, whether the exceptions stated in the condition are to be taken as positive and exclusive of all others, or only as general denominations or classes of excuses, comprehending likewise others of like character, not named.

In considering the first point, no question will be raised whether a distinction exists between bonds at common law and statutory or official bonds in the admission of the defence of inability of the obligor to perform. On this assumption it is clear that a party cannot be exonerated from his covenant by showing merely physical inability subsequently accruing on his part to perform it; or that others whose assent and concurrence are necessary to its execution cannot be prevailed upon nor compelled to aid or permit its performance. The common-law rule is stringent and precise on this subject. 5 Dane, Abr. 173, § 7; Mounsey v. Drake, 10 Johns. 27; Com. Dig. "Condition" (D 1), 2; (L 14). The obligor takes the hazard of all contingencies which may impede or prevent his doing the act stipulated, other than those overpowering occurrences called acts of God, or of the public enemy, which displace and supercede individual efforts and the ordinary connections and incidents of human affairs. The event of the defendant's indisposition and consequent absence from the ship would not prevent his having his undertaking fulfilled by his under-officers, and thus would not necessarily change his relations to the government and the subject-matter of the contract, and would not, accordingly, be deemed an obstacle interposed by the act of God, and in that sense rendering it impossible for him to perform his engagement.

The other point seems to me, however to present weightier and more prevailing considerations in support of the defence. There are forcible reasons for regarding the exceptions named in the bond as indicating the description of facts which should operate a defeasance, and not as intended to restrict the excuse to those specific particulars. If sailors are "forcibly impressed into other service" the master is exonerated, and assuredly the exemption would be extended, upon every principle of construction, to prisoners of war, or those captured by pirates, the condition of the bond looking to the interposition of an adversary force, irresistible by the master, as the ground of excuse, and not to the disposition made by the seaman of the invading force and a just and rational interpretation of the exceptions would therefore apply the principle to other facts of like character and effect with that specified. That this construction of the exception may be admissible is also probable, because the bond is exacted by statute and is given by the defendant in his official character of master of the ship. He stipulates in that capacity, and the manifest import of the engagement is that it shall have relation to his acts whilst actually or virtually in command of the vessel. It calls for the exercise of his powers as master and such only. Viewed merely as a personal obligation it would be senseless, if not nugatory; for the defendant, individually and independently of his official relation to the vessel, could have no rightful authority to keep or present the crew list to a boarding officer or control the movements of this seaman, and compel his continuing with the vessel or return to the United States. It was then necessarily the power of the master of the vessel which was designed to be bound by the bond, and to have it exercised to the end appointed; and that authority it was which the United States contracted with and relied upon. The exceptions to this condition all tend to indicate and corroborate that construction of the contract. They release the defendant from its obligation, in cases where he could not have or employ the authority of master, and parity of reason would carry the exemption to every case where that authority no longer existed on his part or could not be legally exercised by him. In case of desertion not attended with concealment the master personally, or those in his place for the time, his under-officers, have rightful power to bring back the deserter by force, or can apply to the local authorities to aid in recovering him. An omission to do one or both would be plainly a dereliction of duty, which the obligation of the bond properly covers. But in this case, the defendant had ceased to be master of the ship. He could not arrest the sailor by his own authority, and had no right to invoke the aid of the civil magistrate to cause the arrest had the desertion taken

place in the port of Liverpool; and it is not easily perceived what defence to an action for false imprisonment the defendant could have made, had he seized the sailor, and attempted to bring him home forcibly, after his relation as master of the vessel had terminated. This train of reasoning might be extended, but I shall content myself with stating the general conclusions that the bond being given by the defendant as master of the ship, and received and exacted by the United States from him in that capacity, and having stipulated for acts and the exercise of powers by him as master alone, and pointing out exemptions from its obligation where that official authority could not be exercised or applied, I am of opinion that its penalty does not attach and cannot be enforced against him in respect to any of the crew leaving the ship after the defendant ceased to be her master, and she was placed under the command of another person.

Judgment must accordingly be rendered on the special verdict for the defendant.