ALBANY,
Jan. 1813.

MOUNSEY *against* DRAKE AND GOFF.

MOUNSEY
v.
DRAKE.

THIS was an action of debt, on a bond, dated 17th *January,* 1811, executed by the defendants to the plaintiff, for 160 dollars: conditioned, " that if the defendants should pay to the plaintiff the sum of 80 dollars and 79 cents, together with the costs of a suit, then pending in the court of common pleas of *St. Lawrence* county, in favour of the plaintiff against *Levi Tuttle,* (who had given a *cognovit* therein for that sum,) on or before the first *Thursday* of *June* next ensuing the date of the said bond; or if the said *Levi Tuttle* should pay the said sum, or surrender himself into the custody of the sheriff of the said county of *St. Lawrence,* in the said suit, on or before the said first *Thursday* in *June* next; or it should so happen, that the said *Levi Tuttle* should die on or before the said first *Thursday* in *June,* then the obligation to be void," &c.

The cause was tried at the *St. Lawrence* circuit, the 24th *June,* 1812, before Mr. Justice *Thompson.* The plaintiff produced and proved the bond, and also a record of a judgment in the suit referred to in the condition, in which the costs were assessed to 28 dollars and 10 cents, and claimed damages on the breaches assigned under the statute, to 115 dollars and 2 cents.

The defendants, under a notice subjoined to the general issue, offered to prove, by *Levi Tuttle,* that he, *Tuttle,* was at the court-house in *St. Lawrence* county, on the first *Thursday* in *June,* 1811, and appeared before the sheriff of the county, and offered to surrender himself up into the custody of the sheriff, agreeably to the condition of the bond, and was in the presence of the sheriff and the plaintiff's attorney, ready to surrender himself, &c.

The plaintiff's counsel objected to the admission of the testimony; 1. Because it went to prove only an *offer* to surrender, and not an actual surrender; 2. Because *Tuttle* was an incompetent witness, on the ground of interest.

The defendants then produced the discharge of *Tuttle* under the late insolvent act, and he was admitted as a witness. He testified that he was at the court-house in *Oswegatchie,* in *St. Lawrence* county, before and on the first *Thursday* of *June,* 1811,

*A. gave a bond to B. conditioned to be void, if C., against whom A. had brought a suit, &c. should, on or before a certain day, pay to A. the amount of the damages and costs recovered in that suit, or should surrender himself into the custody of the sheriff of L. in that suit, on or before that day, &c.; and it was proved that C. did not pay the money, &c. but that he appeared at the time and place mentioned in the condition of the bond, and offered himself to the sheriff of L., and to the attorney of the plaintiff, for the purpose of being surrendered, according to the condition of the bond; but did not, in fact, surrender himself into the custody of the sheriff. It was held that the condition of the bond was broken, and the plaintiff entitled to recover; the defendant being bound to procure a strict performance of the specific act of surrender by C. into the custody of the sheriff; and a mere offer to surrender by C. would not excuse the non-performance.*

having gone there for the purpose of exonerating his sureties, and continued there during the *June* term of the court of common pleas of the county; that during the time he was there, he had repeated conversations with the sheriff of the county, and mentioned to him the reason of his coming there, and talked about surrendering himself; and he also told the attorney of the plaintiff that he had come there to surrender himself up in exoneration of his bail.

Both the sheriff and the attorney of the plaintiff, testified, that they had no recollection of seeing *Tuttle* at the *June* term of the court of common pleas, &c. or that any conversation passed between them as stated by *Tuttle*. The attorney stated that he was anxious to have *Tuttle* taken, and had actually filled up a *ca. sa.* for that purpose; but no execution at that time was actually issued against him.

The jury, under the direction of the judge, found a verdict for the plaintiff, subject to the opinion of the court.

A motion was made to set aside the verdict, and for a new trial.

*Henry*, for the plaintiff.

*Foot*, contra.

*Per Curiam.* One of the conditions of the bond was, that *Tuttle* should, on or before a given day, " surrender himself into the custody of the sheriff of *St. Lawrence*, in the suit" therein mentioned. It is not pretended that the other disjunctive condition has been performed, by the payment of the money, and the question then recurs, is here the requisite evidence of the performance of *this* condition? *Tuttle* himself says, that he appeared at the court-house on the day, (which was the day of holding the court of common pleas,) and talked repeatedly with the sheriff as to his errand, and about surrendering himself, and that he also mentioned his business to the plaintiff's attorney. But neither the sheriff nor the attorney recollect any such conversation, and if they had, the conversation cannot be considered as amounting to a surrender, within the meaning of the condition. He was to *surrender himself into custody.* He was to perform this specific act, and the defendants were bound to see it performed, or pay the money. The loose conversation which *Tuttle* might have had with the sheriff and attorney, was no surrender. That conversation was liable to be misunderstood; and to place reliance upon it

might be productive of uncertainty, mistake, or fraud. The condition of the bond required the performance of an act not to be mistaken or misunderstood, and the defendants were bound, at their peril, to see that the sheriff took or received *Tuttle* into custody, as a prisoner in the suit. The plaintiff was not to do any act to facilitate the surrender. No precedent act was required on his part, and it is no excuse for the non-performance of the condition, that the plaintiff might, and did not, issue an execution to the sheriff, or that the sheriff might, and did not, or would not, take or receive *Tuttle* into custody. It is not sufficient for the defendants to show that *Tuttle* had even done all in his power. A *performance* must be shown, unless prevented by the act of God, or by the act of the law, or by the act of the obligee himself. Lord *Coke* says that if *A.* undertake to enfeoff *B.*, he is bound to prevail on *B.* to accept livery of seisin. So if *A.* covenant that *B.* shall resign his living at a particular time, the covenant is forfeited, though the bishop will not accept the resignation. Thus in the case of *Hesketh* v. *Gray (Sayer,* 185.) the condition of the bond was, that the obligor should deliver up a vicarage into the hands of the proper ordinary, and it was held to be no excuse for the non-performance of the condition, that the obligor had offered to resign and deliver up the vicarage, and that the bishop had refused to accept the resignation. The bishop was a stranger to the obligee, and, therefore, as Sir *Dudley Ryder* observed, it was incumbent upon the obligor to procure his acceptance; for if an obligor undertake for the act of a third person who is a stranger to the obligee, it is incumbent upon the obligor to procure the act to be done, unless at the time of entering into the bond there was an impossibility of doing the act, or the doing of it had since become impossible, by the act of God, or of the law. There are many other cases, and through every period of the law, in which the same principle is laid down, and with equal strictness. (*Lamb's Case,* 5 *Co.* 23. *Doughty* v. *Neal,* 1 *Saund.* 215. *Studholme* v. *Mandell,* 1 *Ld. Raym.* 279. 1 *Roll. Abr.* 452. 1. and several cases there quoted from the *Year Books.*) The bond in this case was, therefore, forfeited, and the plaintiff is entitled to judgment.

Judgment for the plaintiff.