JOHN FENTON *v.* WM. S. CLARK.

<div style="float:right">WASHINGTON,<br>*July,*<br>1839.</div>

If A. contracted with B. to labor for him four months from a given day, at ten dollars per month, and was to receive no pay till he had worked the four months, still, if he is prevented from completing the four months' labor, by reason of sickness, he may recover, *pro rata*, for the services performed, upon a *quantum meruit.*

THIS was an action of book account. Judgment to account having been rendered in the county court, an auditor was appointed, who afterwards reported, that the plaintiff's account was for one month and twenty one days' work, at ten dollars per month, in relation to which the auditor found the following facts:

The plaintiff commenced working for the defendant on the 19th of September, 1837, under a contract to work four months, at $10 per month, and to receive no pay until he had worked the four months. The plaintiff worked well and steadily, with the exception of three or four days, when he was unwell and unable to work, until the 14th of November, 1837, when he left the employment of the defendant.— At the time of so leaving, the plaintiff complained of being unwell. For three weeks or more afterwards, he refused to be employed by others, because he was not able to work, and complained frequently of being unwell, and occasionally had turns of vomiting and being faint. Some time in December, 1837, he commenced working for one Crosby, and continued to work for him to the middle of February, but did not work constantly, as he was occasionally unwell; and, during this time, he worked, in all, about one month.—

The labor performed for Crosby was the principal part of the plaintiff's labor from the time he left the defendant until the February following.

At the time when the plaintiff left the defendant's employment, the defendant told the plaintiff that he, the defendant, was willing to have the plaintiff go away a week or two and recruit his health, and return again and complete the four months' labor which he had engaged to perform. The plaintiff did not return, nor did he offer to return and work the remainder of the four months.

The auditor further found, that the plaintiff was not able

to work after he left the employment of the defendant, to the month of Feoruary following, any more than he did work, as before stated.

The auditor further reported, that, if the court should be of the opinion, from the facts above stated, that the plaintiff was entitled to recover, then he found a balance of $13,25, due from the defendant to the plaintiff; but, if the court should be of the opinion that the plaintiff was not entitled to recover, then he found nothing due to either party.

The county court rendered a judgment in favor of the defendant, and the plaintiff excepted.

*P. Dillingham,* for plaintiff.

The performance of four months' labor, by the plaintiff, seems to have been so far a condition precedent, that he could not voluntarily or wilfully abandon the defendant's service short of the full term, and recover for the time he had worked.

But we contend, that the fact of his having been prevented from fulfilling the term, by sickness, entitled the plaintiff to recover, on a *quantum meruit,* for the labor performed, as it would have enabled his representatives to do, had his sickness ended in death.

In settling and adjustting all contracts like the one in question, the parties universally proceed upon the ground that, in case of sickness or death, what has been done shall be paid for. This practice is as old as the business of our state, and as general as any other custom among us is, or ever can be.

The common law puts the same construction upon contracts for labor and service. *Wiggins* v. *Ingleton,* 2 Ld. Raym. R. 1211, cited in 6 Term. R. 322. 3 Comyn's Dig. 125, L.

The doctrine or construction we contend for is fully sustained and admitted in the case of *Cutler, Adm'r of Cutler.* v. *Powell,* 6 Term R. 320.

*F. F. Merrill and L. B. Peck,* for defendant.

I. It is contended that the plaintiff is precluded from recovery by the express terms of the contract, he not having performed the stipulated condition. Where the parties have made an express contract, none can be implied until that is executed. And this rule applies though performance be

prevented by the act of God, unless there be an exception of that event in the contract. Lawes' Assumpsit, 22. 1 Salk. 65.

In *Cutler* v. *Powell*, 6 T. R. 320, it was decided, that where, by the terms of the contract of service, the wages are not payable until the term of service has expired, and the servant dies, or the service is otherwise terminated, without the master's fault in the interim, none are due, *pro tanto*, unless under a custom or usage. An exception to the rule is where a seaman is impressed. The same principle is recognized in 1 Swift's Dig. 682, 683. *Faxon* v. *Mansfield*, 2 Mass. R. 147. 12 Johns. R. 165. 13 do. 94. 15 do. 224. *George* v. *Elliott*, 2 Hen. & Munf. R. 5. Chit. Con. 272. 8 T. R. 267. 3 Burr. 1637. 3 M. & S. 267.

In 3 Viner's Ab. 8, it is stated that no case can be found where it has been decided that a contract for wages is apportionable.

" In all contracts of service, the performance of the entire term is a condition precedent to the right of recovery, and nothing short of an express stipulation to that effect will enable the party to recover for part performance." 8 Vt. R. 54. 6 do. 35, 383.

It is noticeable, that, in none of the cases, is there any intimation that sickness or any unavoidable event is a sufficient excuse to satisfy the condition precedent. The *dictum* of Lawrence, justice, in *Cutler* v. *Powell*, that "in the common case of a hired servant he is to be considered to be hired with reference to the general understanding that he shall be entitled to his wages, though he does not serve the entire term," is limited expressly to cases where there is no special contract, which, of course, negatives such an " understanding." Nor can it be inferred, that in contracts like the present, the parties do not intend to include sickness. For it may often happen, as probably was the fact in this case, that the master *does* intend to include sickness, from various motives, perhaps to avoid frivolous pretences of sickness on the part of the servant. The only safe rule is that adopted in 8 Vt. R., that there must be an express stipulation to that effect, to enable the party to recover for part performance."

II. After the plaintiff recovered from his indisposition, which was in February, as the auditor finds, he should have offered to complete the contract. 7 Mass. R. 325.

WASHINGTON,
July,
1839.

Fenton
v.
Clark.

The opinion of the court was delivered by

BENNETT, J.—The plaintiff, in this case, having been prevented from fulfilling his contract with the defendant, by reason of sickness, the important question presented for our decision is, can he recover for the labor performed, as upon a *quantum meruit,* so much as it was reasonably worth to the defendant?

The position, that if A. contracts with B. to labor for him for a given time, and for a stated consideration, and A. voluntarily leaves the service of B., before the expiration of the time, there can be no recovery, is sustained by numerous adjudged cases. There can be no recovery in such case, even upon a *quantum meruit,* it is said, because the contract is entire, and its performance a condition precedent. Though it is difficult for me to see any very sound ground of distinction between such a case and one, for instance, where one person contracted with another to build a house, according to a given plan, and for a given sum, and failed to perform the contract according to its terms; yet a different course of decisions have obtained in the two cases. The contract is entire, and its performance, it would seem, as much a condition precedent in the one case as in the other. In both the defendant has had some benefit from the plaintiff's labor, and in neither can the parties be placed *in statu quo* by rescinding the contract. The same technical difficulty exists to a recovery in the one case as in the other, and were the question new, it might well be inquired, whether a different rule should be applied to the two cases. In the case of *Britton* v. *Turner,* 6 N. H. R. 493, it is said by Parker, J. that the technical reasoning that the performance is a condition precedent, and that there can be no apportionment, does not apply to the case of laborers, and that where beneficial service has been performed, under contracts of this description, the mutual agreements cannot be considered as going to the whole of the consideration, so as to make them mutual conditions, the one precedent to the other, without a specific proviso to that effect. In *Boon* v. *Eyre,* 1 H. Bl. R. 273, n. Lord Mansfield says, " the distinction is very clear, where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other; but where they go only to a part, where a breach

may be paid for in damages, there the defendant has a remedy on his covenant, and shall not plead it as a condition precedent." In *Ritchie* v. *Atkinson*, 10 East's R. 295, the contract was for the delivery of a complete cargo of hemp and iron at a given price for each per ton, and it was held the party might recover for so much as he had delivered, though less than a full cargo, and the defendant have his damages for such short delivery. So in the case of *Kimpton* v. *Casson*, 5 B. & C. Rep. 378, where a given quantity of bark was sold at a given price per ton, and but a part of it delivered, it was held, the defendant having kept the part delivered without an offer to return it, an action lay for it.

Whenever a benefit has been conferred on the defendant by a part performance of a contract, and the party cannot be restored to the benefit of his own labor, to hold that there can be no recovery on a *quantum meruit*, operates as a forfeiture and in the nature of a penalty; and the principle should not, as I think, be extended beyond what the authorities require. It has, indeed, already been extended by some courts to great lengths. In *Lantry* v. *Parks*, 8 Cowen's R. 63, the contract was for the hiring for a year, at a given price per month. The plaintiff, after working ten and a-half months, on a Saturday left the defendant's service without any good cause, but on the Monday following returned, and offered to go to work again, when the defendant refused to employ him, and yet it was held there could be no recovery for the ten and a-half months labour, upon the technical ground that the contract was entire, and the performance of it a condition precedent.

That case furnishes a practical illustration of the manifest injustice which may be done, under the rule that there can be no apportionment in the case of hired laborers for a given period. It is not the object of the law to punish the party for a violation of his contract, but to make the other party good for all damages he may sustain by such violation. Common justice required that the plaintiff should have been permitted to recover so much as the defendant had been benefitted by the labor, after deducting any damages he might have sustained by reason of the violation of the contract. There is less practical difficulty in making an apportionment

in the case of laborers, than in many others, where it is done. Under the doctrine that the contract is entire, and its performance a condition precedent, the result is, that if the laborer fails to fulfil his contract, but for a single day, he forfeits all that he has done, and in case of what he esteems maltreatment, he must submit to it, or leave his employer, not only subject to answer for such damages as may be sustained, but even at the peril of forfeiting all former earnings, in case it should be found by a jury of his country, that he had left the service without sufficient cause. This forfeiture may be ten, or even an hundred fold, more than sufficient to compensate for all damages arising from a violation of the contract. If, in such case, there can be no recovery for the labor performed, upon a *quantum meruit*, on the ground that the contract is entire, does it not follow, that the laborer, when sued for a breach of his contract, could not interpose any part performance of it, as a partial or total defence of the action ? If he had received part payment, could he not be called upon to refund such payment, without regard to any benefit which he might have conferred upon the other party, by any partial performance of the contract on his part ? But we are not called upon to apply the principle to an ordinary case, but to one where the party was prevented from performing the contract, on his part, by reason of sickness, and it is contended by the defendant's counsel, that this should not alter the rule. It is undoubtedly settled law, that where a party, by his own contract, creates a duty or charge upon himself, he is bound to make it good, *if he may*, notwithstanding any accident by inevitable necessity, because, it is said, he might have provided against it by his contract. Upon this principle, where the party covenants to repair, and leave the houses and buildings in as good plight as he found them, he will be answerable for all damage, even if committed by the public enemy, or occasioned by storms, flood, fire, or lightning. It is to be remembered, that in such cases, there is nothing in the nature of things that renders it impossible for the party to perform the obligations which he has assumed by his own contract. In cases where the act of God renders the performance *absolutely impossible*, the contract is discharged, according to the maxim "*impotentia excusat*

*legem.*" This position is sustained by many adjudged cases. In 1 Coke's R. 98, is cited a case as having been decided as early as Edward III, in which it was held, if a lessee covenants to leave a wood in as good plight as it was in at the time of the lease, and afterwards the trees are blown down by a tempest, he is discharged of his covenant. In *Williams* v. *Hyde,* Palm. R. 548, the defendant had covenanted to deliver to the plaintiff a certain horse on request. The horse having died, by reason of sickness, without the fault of the party, before request was made, it was held that the death of the horse, being the act of God, relieved the defendant from his contract. In 1 Shep. Touch. 180, it is laid down, if a person covenant to serve another seven years, and he die before the expiration of the seven years, by this the covenant is discharged. See also Gilb. on Covenants, 472. So in the case of *Nash* v. *Ashton,* Skin. R. 42, where two husbands seized of lands in the right of their wives, as coparceners, made a feoffment, and covenanted among other things, to make further assurance, if requested, within seven years. The defendant's wife was within age at the feoffment, and died within the seven years, leaving issue a son. And it was contended that the wife dying and leaving a son, an infant, there was an *impossibility* of a further assurance within the seven years, and so a breach of the covenant ;—but it was not so held. In the case before the court, the plaintiff contracted with the defendant, to labor personally for him four months, at ten dollars per month, and, by the terms of the contract, was to receive no pay till he had worked the four months. These services being of a personal character, the contract could not be performed by another, and as the plaintiff was disabled to perform it himself, by reason of sickness, which was the act of God, upon the authority of the forgoing cases, the contract was discharged. The inquiry then arises, what is the result. It appears to me apparent, that the plaintiff must, at least after the expiration of the four months, be permitted to recover, as upon a *quantum meruit, pro rata,* for the services rendered. Common justice requires this, and I should be sorry to find that it was not tolerated by the principles of the common law. To hold, in a case like this, where the plaintiff has been discharged of his contract

*Washington, July, 1839.*

Fenton
*v.*
Clark.

by the act of God, that there can be no apportionment, upon the technical ground that the contract is entire, and its performance a condition precedent, is, to my mind, leaving the substance and adhering to the shadow. If the plaintiff is relieved from the contract, how can the defendant interpose it, as a reason why the plaintiff should not recover for the labor actually performed, though performed under the contract, and while it was in force. Suppose a minor was to contract to labor for another for a given time, and for a given sum, could he not, at any time, repudiate the contract, and recover for such services as he might have rendered?

In the case of *Cutter v. Powell*, 6 Term R. 320, it is indeed held, that if a sailor, hired for a particular voyage, take a promissory note from his employer, for a certain sum, provided he proceed, continue, and do his duty on board for the whole voyage, and before it is completed he dies, no wages can be claimed, either on the contract or on a *quantum meruit*. This case seemed to rest on peculiar grounds. The defendant had contracted to pay thirty guineas, provided the intestate performed the voyage from Jamaica to Liverpool, and the accompanying circumstances disclosed in the case were, that the common rate of wages was four pounds per month, where the party is paid in proportion to the time he serves, and that the voyage, in that case, was usually performed in two months, and therefore, if the whole voyage had been performed, the plaintiff, by the contract, would have been entitled to recover four times the amount he could have recovered, on a *quantum meruit*, for the same services. Lord Kenyon says this contract was a kind of insurance, that the intestate would perform the whole voyage or receive no compensation, and that his opinion was founded on that particular contract. It was admitted by Wood, who argued in that case for the defendant, that in the common case of service, if a servant, who is paid for a year, die in the middle of it, his executor may recover part of his wages in proportion to the time of service. Lawrence, J. in giving his opinion, says, in regard to the common case of a hired servant, with which that had been compared, " such a servant, though hired in a general way, is considered to be hired with reference to the general understanding upon the subject, that the

servant shall be entitled to his wages for the time he serves, though he do not continue in the service during the whole year." Chancellor Kent, in a note to the last edition to his commentaries, 3 Vol. p. 470, says, annuities and servants' wages, like rents, were not in general apportionable at common law. "If," says he, "a servant was hired for a month or a year, and the service ceased within the time, there was no apportionment of wages, for the actual time of service, though the rule operated in some cases most unjustly." But he proceeds to say, "the old rule is now held to be relaxed, and wages, it is understood, may be apportioned, upon the principle that such is the reasonable contract of hiring. This is the doctrine of the South Carolina courts. See McClure v. Pyatt, 4 McCord's R. 26. Bacot v. Parnell, 2 Bailey, S. C. R. 424. It is a doctrine that does substantial justice between the parties, and, as applied to a case like the one under consideration, commends itself to our approbation. In regard to the case in 1 Salk. R. 65, which has been pressed upon the court by the defendant as decisive of this case, it may be remarked, that that was not the common case of a hired servant, and that the decision itself was grounded upon the old rule of the common law, when it was held that wages were not apportionable, the case itself having been decided as early as 1688.

It is argued by the defendant, that in this case it was the duty of the plaintiff, after he had recovered from his sickness, to return to the defendant, and complete his four months' labor, and that, as he did not do it, he is for this cause prevented from a recovery. It is undoubtedly true, that whenever any special matter does not operate to annul the contract, but only as a temporary suspension of it, as in the case in the 7 Mass. R. to which we have been referred, it is the duty of the party to perform the contract within a reasonable time after the cause of its suspension shall have ceased to operate. But, in the present case, the auditor finds that the plaintiff was not restored to health until after the expiration of the four months. His services were of a personal character, and the time of performance material to the rights of the parties. The defendant could not be required to accept of the services, at another time, and the

Washington,
July,
1839.

Fenton
v.
Clark.

plaintiff was as much excused from their performance by reason of his sickness, as he would have been in case of death, and the contract being annulled, by this act of God, and not simply suspended for a time, there is no reason why the plaintiff should have proffered to work for the defendant, after being restored to health. Such proffer the defendant might have rejected, and it could have had no possible effect upon the rights of the parties upon what was already past.

On the whole, then, we think there is error in the judgment of the county court. Therefore, that judgment is reversed, and judgment must be entered upon the report of the auditor, for the plaintiff.

REDFIELD, J.—Dissenting.

I do not propose to go into any extended discussion of the principles upon which this case was decided in the court below, or in opposition to the ground upon which that judgment is now reversed. I can very well perceive the strong grounds of equity upon which the decision now rests. But I confess my inability to reconcile it with the uniform and long standing numerous decisions upon the subject. If the law upon any one subject had been put at rest, and that beyond all possible cavil, I supposed it was in regard to contracts for service, where the entire term was to be performed, before payment of any part of the price. I consider that in the present case, by the express terms of the contract, full performance on the part of the plaintiff was made a condition precedent to any right of action against the defendant. If so, it is in vain to say that the plaintiff was hindered from performing the service by the act of God. That is never any excuse for the nonfulfilment of a condition precedent. *Cutter* v. *Powell*, 6 T. R. 320. That such was the expectation of the parties in the present case, I have very little doubt, from the very peculiar phraseology of the contract. The auditor finds that it was expressly stipulated between the parties, that the defendant should receive no pay until after the four months' labor was performed. In the case last cited, it is said by the court, that "nothing can be more clearly established, than that where there is an express contract between

the parties, they cannot resort to an implied contract." It
is true, no doubt, in the present case, that the plaintiff did
not anticipate being hindered from the performance of his
contract by sickness.   But knowing that such might be the
case, it was his own folly not to provide against such a
contingency.   As there was nothing in the present case re-
quiring the labor to be, necessarily, continuous, if sickness
were to be allowed as an excuse, it ought, at most, only to
excuse the plaintiff from labor while it continued.   He should,
as soon as he was able, have been required to fulfil his con-
tract, but this he neglected to do.   Instead of so doing, he
went and worked for Crosby without offering to resume labor
for the defendant.   Under these circumstances, I see no
more reason to allow the plaintiff to recover for part perfor-
mance, than exists in almost all cases of this character, where,
from some accident, the situation of affairs becomes changed,
and it is inconvenient for the party to perform his contract.
If a condition precedent is to be got rid of thus readily, they
are not made of such " stern stuff" as we have been taught
to consider them.

But if this could be considered as the ordinary case of a
contract of service for a given term, to be paid a stipulated
price at the end of the term, still it has always been held, that
the law implied, on the part of the laborer, an obligation to
perform the entire term, previously to his acquiring any right
to claim pay ; and that he could claim nothing for part per-
formance, unless it was so expressly stipulated in the contract.
In accordance with this are the decisions following.   *S. B.
Company* v. *Wilkins*, 8 Vt. R. 54.   *Smith* v. *Wilson*, 8
East's R. 473.   *Gibbon* v. *Mendez*, 2 B. & A. 17.   *Faxon*
v. *Mansfield*, 2 Mass. R. 147.   In the case of *Morgan* v.
*Carter*, 4 Car. & Payne's R. 295, it is laid down as settled law,
by Ch. J. Tindall, that the act of God is no excuse for the
nonperformance of conditions precedent.   It is said *argu-
endo*, in the case of *Cutter* v. *Powell*, by Lawrence, Jus-
tice, that there is an implied understanding in relation to
common hired servants, that they shall be entitled to their
pay, notwithstanding they do not serve the entire term.   I

do not find any case, in which this suggestion has been followed, nor do I believe that any such implied understanding exists in this country, even, in regard to domestic servants, much less in the case of men hired for the farming season, where the loss of a single month's labor might cost the loss of the products of the entire season. So far as any such understanding exists, it is conceded that it must control the import of the terms used in this contract. Upon authority, then, and that it is better to follow established principles, although they may seem to operate severely in particular cases, and that the contract of the parties, when explicit, is paramount to every other consideration, I think the judgment, in this case, should be for the defendant.