WOLFE, Executor, &c., *v.* HOWES, impleaded, &c.

| | |
|---|---|
| 20 | 197 |
| 114 | 250 |
| 20 | 197 |
| 119 | 114 |
| 20 | 197 |
| 144 | 305 |
| 20 | 197 |
| 159 | 37 |

One who, under a contract requiring his personal services and providing for partial payment during the employment and the remainder at the end of the term, performs services valuable to the employer, but is before the expiration of the stipulated period disabled by sickness from completing his contract, is entitled to recover as upon a *quantum meruit* for such services as he rendered.

It is unnecessary that the plaintiff should set up in his complaint the excuse for not fully performing the contract.   It is matter of reply to a defence interposing the contract.

APPEAL from the Supreme Court.   The complaint contained the common counts only for work, labor and services done by Nicholas Vache, the testator, for the defendants.   The defend-

ants denied the facts averred in the complaint, and set up as a separate defence that the work was done under a special contract not performed by Vache in his lifetime, and claimed damages for the breach of the contract on his part. The defendants had for nine years previous to May, 1852, been engaged as partners in carrying on the business of making glass at the Dunbarton glass-works, of which they were the proprietors, at Verona in the county of Oneida. The testator was in the employment of the defendants at their glass-works as a pot-maker. On the 1st of May, 1852, the defendants and testator entered into a contract in writing as follows:

"Memorandum of an agreement made this day. Howes Scofield & Co. [defendants], of the first part, and Nicholas Vache of the second part, *Witnesseth*, That for and in consideration of $1 to me in hand paid, the receipt whereof I do acknowledge, do agree on my part to do all the pot-room work for said parties of the first part, in a good and workmanlike manner, for one year from the date of this contract, at the price of $40 per month, $10 of which is to be paid me monthly. Dunbarton, May 1st, 1852. If extra help is needed, we agree to furnish it.

"(Signed)     NICHOLAS VACHE."

The trial was before a referee, who found the following facts: The plaintiff's testator entered upon the performance of the contract, and continued to fulfill it in all respects according to the terms thereof, in a good and workmanlike manner from the 1st day of May, 1852, to the 7th day of December, following, when Vache became sick and unwell, and so continued for a long time, and at length died. By reason of his said sickness, and without fault on his part, he became and was incapable of further performance of his said contract.

He held as matter of law, that by reason of his sickness and death, Vache was released and discharged from the further performance of his contract, and his executor was entitled to recover a reasonable compensation for the services of his testator.

Wolfe v. Howes.

That such reasonable compensation was the sum of $40 per month, for the time of the testator's service; and after deducting certain payments made to him from time to time, there was a balance due of $159.28, for which he ordered judgment with costs. The defendants took several exceptions to the finding of the facts and the decisions of the referee on the questions of law, and particularly to the conclusion that Vache was released and discharged from further performance of the contract, and that the plaintiff was entitled to recover a reasonable compensation for the services rendered by his testator for the defendants, and in not allowing a sufficient amount of set-off. The Supreme Court, at general term in the fifth district, having affirmed the judgment entered on the report of the referee, the defendants appealed to this court. ·

*Timothy Jenkins*, for the appellants.

*Francis Kernan*, for the respondent.

ALLEN, J. There can be little doubt, I think, that the contract with Vache contemplated his personal services. This is evident, both from the nature of the business and the amount of compensation agreed to be paid him. It is also manifest from the evidence on both sides. The business of pot-making required skill and experience. It was an art to be acquired after much study and labor, and which Vache seemed to have accomplished. The execution of the work required his constant and personal supervision and labor. No common laborer could have supplied his place, and hence the amount of his wages was largely increased beyond that of such a hand. The extra help mentioned in the contract had reference to the breaking away of the flattening, so called, and to its repair, and nothing else. The whole testimony shows this, as well as that the personal services of Vache were contracted for. The referee therefore well found and the court below well decided that such were the terms of the contract.

2. The question is then presented whether the executor of a mechanic, who has contracted to work for a definite period,

and who enters upon his labor under the contract, and continues in its faithful performance for a portion of the time, until prevented by sickness and death, and without any fault on his part, from its final completion, can recover for the work and services thus performed by his testator.

The broad ground is taken on the part of the defendants' counsel, that no recovery can be had under such circumstances; that full performance was a condition precedent to the right of recovery, the agreement being general and absolute in its terms, and not providing for the contingency of sickness or death.

It has undoubtedly been long settled as a general principle, both in England and in this as well in most the other States, that where the contract is entire, nothing but the default of the defendants will excuse performance. It will be found, however, on an examination of the leading cases in our own courts, that the failure to perform was owing to the fault or negligence of the party seeking to recover. (*McMillan* v. *Vanderlip*, 12 *John.*, 165; *Reab* v. *Moor*, 19 *John.*, 337; *Jennings* v. *Camp*, 13 *John.*, 94; *id.*, 390; *Sickels* v. *Pattison*, 14 *Wend.*, 257; 8 *Cow.*, 63, *and various other cases.*) It is believed that not a single case can be found where the rule is laid down with such strictness and severity as the defendants' counsel asks for in the present case.

Some of the English cases do indeed rather intimate such a doctrine. (*Cutler* v. *Powell*, 6 *Term R.*, 320; 8 *id.*, 267; *Appelby* v. *Dods*, 8 *East.*, 300; *Hulle* v. *Heightman*, 2 *id.*, 145, *and some others.*) These cases are, however, capable of the same reasonable construction which the law confers upon all contracts. That of *Cutler* v. *Powell* is distinguishable in this, that by the peculiar wording of the contract it was converted into a wagering agreement, by which the party, in consideration of an unusually high rate of wages, undertook to insure his own life and to render at all hazards his personal services during the voyage, before the completion of which he died.

The great principle upon which the adjudged cases in all the courts is based, is the question, as stated in *McMillan* v. *Vanderlip*, already cited, What was the real intention of the par-

ties? The law gives a reasonable construction to all contracts. For instance, in the present case, did the parties intend that the contract should be binding upon the plaintiff's testator in case of unavoidable sickness or death; or did they intend, and is it to be implied, that each should perform, as to the other, according to the terms of the contract, *Deo volente?* It appears that a fair and legal interpretation would answer this question in the affirmative, and that such a provision must be understood as written in the contract. Nor is this principle wanting sanction either by elementary writers or adjudged cases. "Where the performance of a condition is prevented by the act of God," "it is excused." (*Cruise's Digest, Condition,* 41, 43; 3 *Kent Com.,* 471; 2 *id.,* 509; 8 *Bing.,* 231.) In *Mounsey* v. *Drake* (10 *John.,* 27, 29), the court say, "Performance must be shown, unless prevented *by the act of God,* or of *the law.*" (1 *Shep. Touchstone,* 180; *Gilbert on Covenants,* 472; *People* v. *Manning,* 8 *Cow.,* 297; *People* v. *Bartlett,* 3 *Hill,* 570; 12 *Wend.,* 590; *Chit. on Con.,* 631; 1 *Parsons on Con.,* 524, *and note;* 11 *Verm.,* 562; 11 *Metc.,* 440.)

There is good reason for the distinction which seems to obtain in all the cases, between the case of a willful or negligent violation of a contract and that where one is prevented by the act of God. In the one case, the application of the rule operates as a punishment to the person wantonly guilty of the breach, and tends to preserve the contract inviolable; while in the other, its exception is calculated to protect the rights of the unfortunate and honest man who is providentially and without fault on his part prevented from a full performance.

There is another reason for relaxing the rule, which is applicable to the case we are now considering. It is well set forth in *Story on Bailments* (§ 36, *and notes*), where that learned jurist, after considering the great number of cases on this subject in the various courts of England and this country, and well observing that they are not at all times in harmony, remarks that the true rule may be considered to be, "that where the contract is for personal services which none but the promisor can perform, there inevitable accident or the act of

God will excuse the non-performance, and enable the party to recover upon a *quantum meruit.* But where the thing to be done or work to be performed may be done by another person, then all accidents are at the risk of the promisor." In the present case the finding shows, and I have already remarked, justly, that the contract was personal, and that the executor could not have employed a third person to execute the contract on the part of his testator Vache.

But without pressing this point further, it is sufficient to say that it was virtually decided against the defendants by this court, in the case of *Jones* v. *Judd* (4 *Comst.,* 411). It was there decided that when, by the terms of the contract for work and labor, the full price is not to be paid until the completion of the work, and that becomes impossible by the act of the law, the contractor is entitled to recover for the amount of his labor. In that case the work was stopped by the State officers in obedience to an act of the Legislature suspending the work; and the court held that as the contractor was without fault, he was entitled to recover. The case in 10 *John.,* 27, before cited, was referred to and approved of as authority in favor of the position; and see *Beebe* v. *Johnson* (19 *Wend.,* 502).

The conclusion, then, is, that where the performance of work and labor is a condition precedent to entitle the party to recover, a fulfillment must be shown; yet that where performance is prevented or rendered impossible by the sickness or death of the party, a recovery may be had for the labor actually done. This is not out of harmony with principle or adjudged cases, and is certainly in harmony with the rules of common honesty and strict justice.

These views dispose of the main questions in the case. It is necessary to notice one or two of minor importance.

It is insisted that if sickness were an excuse for the non-performance of the contract on the part of Vache, that such excuse should have been alleged in the complaint, and this not having been done, that the plaintiff is not entitled to recover. It is true that the plaintiff might have set up the agreement and the excuse for its non-performance, and entitled himself to recover

upon such a pleading. But the complaint proceeds upon a *quantum meruit;* and upon showing the work and labor of Vache the plaintiff entitled himself to recover. The defendants set up the special agreement as matter of defence, and the plaintiff's excuse was properly enough matter of reply. The contract was in fact discharged by the act of God, and its chief consequence was to measure the amount of the plaintiff's damages, or to regulate the compensation to which the plaintiff was entitled, though his remedy was as upon a *quantum meruit.* So say some of the cases already cited.

Again, it is said that if the plaintiff was entitled to recover anything, it could be only $10 a month, and that the defendants' set-off having been found by the referee to amount to more than that, the defendants were entitled to judgment. This objection is not tenable. The compensation was to be at the rate of $40 per month; $10 (a part) of which was to be paid monthly. This was upon the supposition that the contract was to be performed for the whole time. This, however, having been rendered impossible, the plaintiff was entitled to recover, if anything, the full value of the services of the testator, not exceeding the rate of compensation secured by the terms of the contract.

It is further urged that the referee erred in not allowing defendants' damages accruing to them after Vache was sick and before he quit. That was a question of fact entirely for the referee. He found that the plaintiff did his work well and skillfully, down to the time of his sickness; he allowed and deducted the whole amount of set-off proved by defendants; and he does not find that the defendants sustained any damages by reason of any defect in Vache's work down to the time of his quitting, in December, 1852. With these questions of fact we cannot interfere. The court below sanctioned the finding. I think they were fully warranted in so doing. At all events, we are not at liberty to interfere.

The judgment must be affirmed.

JOHNSON, Ch. J., concurred, observing that it was material that the defendants had received actual benefit from the services

of the plaintiff's testator, and that quite a different question would be presented by a case where the services actually rendered should prove valueless; as, *e. g.*, if one should be retained to compose an original literary work, and having faithfully employed himself in preparation, should die without having completed any work of value to the employer.   COMSTOCK, J., and other judges concurred in this qualification.

Judgment affirmed.