## GREEN and another vs. GILBERT.

CONTRACTS *for personal services: sickness excuses non-performance: recovery for part performance.—Reversal of judgment.*

1. Sickness excuses delay, or even non-performance of contracts *for personal services.*
2. In case of a partial non-performance of such contract, by reason of sickness, where payment was to be made, on its completion, at a certain rate per day, a recovery for the work done can be had only on a *quantum meruit*, and not on the contract.
3. A judgment will not be reversed unless the appellate court is satisfied that the court below erred to the prejudice of the appellant.

APPEAL from the Circuit Court for *Columbia* County.

On the first of April, 1862, the plaintiffs, *Green* and *Sheldon*, who were co-partners in the business of drilling wells, were employed by *Gilbert* to drill a well for him, at a place by him designated on his land.    *Green* furnished the drilling machine, and sometimes assisted *Sheldon*, who during that year did most of the work.    About the middle of July or the 1st of August, when they had drilled 93 feet, they suspended work for a time; and about the last of October *Sheldon* enlisted, and never returned to the work.    About the middle of December, *Green* proposed to resume work upon the well, but *Gilbert* objected, asserting that they had violated their contract, and that he was no longer bound.    Some arrangement was however made, and *Green* drilled seventeen feet further, and again suspended work.    In the spring of 1863, *Green* again proposed to resume the drilling, but *Gilbert* forbade him to do so.    This action was brought to recover for the work so done, at the rate of $1.50 per foot.    The complaint alleges that the contract between the parties, April 1, 1862, was for payment at that rate for whatever distance plaintiffs might drill, they agreeing to " drill for defendant until he should deem it best to stop."    It also avers, as the reason for suspending the work the second time, that *Green* " was taken sick and compelled to relinquish " its farther prosecution at that time.    The answer avers that the contract on plaintiffs' part was, to construct the well "as soon as by due diligence and energetic exertion " on their part, it could be constructed, so as to furnish constantly a certain amount of water; that plaintiffs should immediately commence the work, and continue it until the well was thus completed ; and if they failed so to complete it, they were to receive no pay.    It then alleges that plaintiffs abandoned the work about the middle of July, 1862, and shortly afterwards dissolved partnership, and *Sheldon* left the state, and has not since returned, to defendant's knowledge; that in December, 1862, *Green* and defendant en-

tered into a new contract, viz., that if *Green* should pay defendant $25 damages for board, use of defendant's team, &c., the previous summer, and should go immediately to work and complete the well as previously agreed, then, upon its completion, defendant would pay him at the rate of $1.50 per foot; but in case of a failure to complete the work, *Green* was to receive no pay. The answer also sets up a counter-claim for damages for plaintiffs' non-performance of their contract. Reply, in denial.

The evidence, which was voluminous, will not be stated. The following instructions asked by defendant, were either refused or modified by the court as hereinafter stated. 1. " If plaintiffs were partners, and the partnership was dissolved before the work was completed, and a new contract for the completion of the well made with one of them, upon a valuable consideration, they cannot recover in this action." Qualified by adding, " unless the other plaintiff, by an arrangement between the plaintiffs, had, at the commencement of this action, an interest in the recovery." 2. " If the contract between the parties was entire, to dig the well, and payment was not to be made until it was completed, plaintiffs cannot recover, unless they have performed their contract." Qualified by adding, " or are excused according to other instructions which I shall give you." 3. " The sickness of one of the parties will not excuse the performance of this contract." Refused. 4. " If plaintiffs did not prosecute the work with due diligence and use their best possible exertions to perform the contract they cannot recover, unless they have completed their contract.'' Refused. 5. " Plaintiffs were bound to perform their contract within a reasonable time, and unless defendant, by his acts, delayed them, and prevented them from performing it, they cannot recover." Qualified by adding: " This is upon the supposition that no time was fixed by the terms of the agreement, and that plaintiffs were not excused by sickness."

The court gave the jury the following instructions requested by the plaintiffs: "1. If plaintiffs were to secure water or receive no pay, this will not prevent a recovery, if the work was stopped by defendant before a breach by plaintiffs. 2. The jury are at liberty to find from the evidence, that defendant, in consenting to a resumption of the work in December, 1862, waived all delinquencies of plaintiffs up to that time. 3. If defendant, with full knowledge of *Sheldon's* absence, consented for a good consideration to have the work resumed under the sole charge of *Green*, and if the service contemplated peculiar skill and personal service on the part of *Green*, then sickness on his part, which disabled him from proceeding with the work, is a legal excuse for delay ; and if defendant refused to let plaintiffs go on according to the contract, plaintiffs can recover, if they had a joint interest at the commencement of the action." The court further instructed the jury, as follows : "1. One theory of the plaintiffs is, that the original contract continued throughout, and that the transaction in December between *Green* and defendant is to be considered as a modification of the contract as to terms only. The other theory is, if you do not find that this was such a modification of the first contract, but was a new contract exacted by the defendant after refusal to have the work proceed under the first contract, that then the parties are entitled to recover for work done prior to this time, and also for work done subsequently, if they show a legal excuse for finally abandoning the work. 2. If you find a new contract was made in December, was the time of its performance.fixed ? If so, have the plaintiffs been delayed by sickness, and finally prevented from completing it by the refusal of the defendant to let them go on according to the contract ? 3. The defendant's theory, based on the original agreement, is, that it had ceased in December, and there was a new one then made, which the plaintiffs also failed to perform ; or, that if plaintiffs are to be regarded as having gone on in De-

cember under the old contract, then that they have failed since. 4. The plaintiffs must have had a joint interest in the subject of the action (that is, in the recovery) at the time of its commencement, in order to maintain this action.    5. If either party had, in some particulars, failed, during the progress of the work in 1862, did the other party assent to the failing party going on under the contract afterwards, consenting to waive the default?    If so, the party so consenting cannot now go back and claim that such failure was a violation of the contract.    For instance, the plaintiffs being gone, or the defendant failing to furnish money, if you should find that, by the terms of the original contract, he was to furnish it.    6. Sickness, such as to prevent the party from performing the contract, is an excuse for the non-performance; but you must find, as a matter of fact, that this was work requiring skill; that the original contract, as charged, or the new contract, contemplated the personal services of *Green;* and that the drilling is of some benefit to *Gilbert,* not speculative—that the well itself, as it now stands, is of some value as a permanent improvement. In this view of the case, plaintiffs could recover only the value of the improvement."

Verdict for plaintiffs for $139.50; motion for a new trial denied; and the defendant appealed from a judgment on the verdict.

*G. C. Prentiss* and *Emmons Taylor,* for appellant.

*Hazleton & Dering,* for respondents.

Downer, J.    Errors are assigned in granting and refusing instructions to the jury.    If the contract between the parties was, that the plaintiffs should sink the well till they got water, or have no pay; and if it was so understood when, in December, 1862, after *Sheldon* had gone to the war, the defendant consented that *Green* should go on and complete the job; then it is obvious the plaintiff ought not to have recovered, unless the

jury found that the contract was for the personal services of *Green* in drilling the well, and he was by sickness prevented from performing the work from the time he stopped, about the first of January, 1863, until he offered to go on and complete the job, when the defendant refused to permit him to do it. Sickness is sufficient to excuse delay, or even non-performance of contracts for personal services, and is regarded as the act of God. See *Wolfe v. Howes,* 20 N.Y., 197, and authorities there cited. But in such cases the recovery is not for the contract price, but on a *quantum meruit.* It was urged by the appellant's counsel, that the drilling of the well was not a contract requiring skill, and that the plaintiffs might have procured another person to do the work. We think, as there was some conflict in the evidence as to the terms of the contract, which was verbal, it was proper to leave it to the jury to find whether the drilling required peculiar skill, and whether it was the intention of the defendant in December, 1862, to waive past delinquencies and the personal services of *Sheldon ;* also whether it was then the agreement of the parties that *Green* should give his personal services in the completion of the job. The instructions asked by the defendant, and refused, are not in harmony with these views, and were therefore rightly refused.

We have more difficulty with the instructions given. Some of them are somewhat obscure. Yet we think they may reasonably be so construed as to be in harmony with correct principles of law. To reverse the judgment, we must be satisfied that the circuit court erred to the prejudice of the appellant. It is not clear to us that there was such error, and we therefore affirm the judgment.

*By the Court.*—Judgment affirmed.