Let a mandamus issue in accordance with these views.

---

# SUPREME COURT.

STIMPSON H. BABCOCK agt. E. O'MEARA GOODRICH, as executor of the last will and testament of THOMAS O'HARA, deceased.

*Contract—When a personal one, and rescinded by the death of one of the parties.*

If a contract is so far personal that the representatives of one of the parties to it is not responsible in damages for refusing to complete its performance, the representative of the other party is not so responsible for like failure; in the absence of evidence of intention to bind the representative.

H., a merchant tailor, employed the plaintiff to labor in his shop at cutting garments, for a year, at an agreed price per week. While the parties were engaged in the performance of the contract H. died and his administrator refused to continue plaintiff's employment:

*Held,* that the contract was purely personal, and was liable to be terminated by the death of either party to it, and the death of H. justified his executor in ending the contract and refusing further to go on in its performance.

*Third Department, General Term, September,* 1879.

*Before* LEARNED, *P. J., and* BOARDMAN, *J.*

THOMAS O'HARA, a merchant tailor, employed the plaintiff to labor in his shop at cutting garments, for a year, at an agreed price per week. While the parties were engaged in the performance of the contract, O'Hara died. After his death, the plaintiff continued his labor for a few days, when the defendant, receiving letters testamentary, paid the plaintiff for all work done, discontinued the business, and refused to longer employ, or pay the plaintiff. The plaintiff presented the executor with a claim for the agreed price per week, for the number of weeks he necessarily remained idle, during the remainder of the year, which was rejected, upon the sole ground that the contract was a personal one, rescinded by the death of O'Hara, and that he was not liable to respond in damages for refusing to complete its performance. The claim was referred, under the statute. The referee found the foregoing facts, and ordered a judgment for the contract price per week, for the time the plaintiff was necessarily idle during the remainder of the year. The case was brought on to be heard upon a case containing exceptions (*Somerville* agt. *Crook,* 9 *Hun,* 664), the plaintiff asking for a confirmation of the report and for judgment, with costs, the defendant that the report be set aside, and for a judgment for costs.

*Scovill & De Witt,* for the plaintiff, appellant.

*Solomon Judd,* for the defendant, respondent.

The following opinion was delivered at special term:

FOLLETT, *J.*—It is clear the agreement was an entire contract (*Davis* agt. *Maxwell,* 12 *Metcalf,* 286), and if it had been broken

without cause by the testator, the plaintiff would have been entitled to recover the contract price, less any amount earned, or which he might reasonably have earned in the same employment at or near the same place (*Costigan* agt. *The Mohawk R. R. Co.*, 2 *Denio*, 609; 2 *Green. Ev.*, sec. 261).

The authorities are agreed that contracts creating the relation of master and apprentice (2 *Kent's Com.*, 266; *Williams on Exec.*, 727, 1561, 1599; *Whincup* agt. *Hughes, Law R.* [6 *C. P.*] 78); principal and agent (*Story on Agency*, sec. 488; *Wharton on Agency*, sec. —); and master and servant (*Williams on Ex.* [7th ed.], 727; *Add. Con.*, 375; *Wood's Master and Servant*, 306), (in the restricted sense in which the term master and servant was formerly used), are personal contracts, determined, as a matter of law by the death of either party. So, also, are undertakings requiring the exercise of peculiar talent, skill and knowledge of one of the parties to the contract (*Robinson* agt. *Davidson, Law R.* [6 *Exch.*] 269; *Will Exrs.* [7th ed.], 1724–1728; 3 *Redfield's Wills*, 274). Such contracts are presumed to have been founded upon personal considerations, made with reference to the personal qualities of the parties. The defendant claims that the contract in this case, created the relation of master and servant; and also that it was an undertaking requiring the exercise of peculiar talent and skill, and, therefore, determined by the death of his testator.

The performance of this contract by the plaintiff required the exercise of personal skill and knowledge, and it could not have been performed by substituted service. Had the plaintiff died during the performance, his representatives could have recovered for his services already rendered, without tendering further performance (*Stubbs* agt. *The Hollywell Railway Co., Law R.* [2 *Exch.*,] 311; *Wolfe* agt. *Howes*, 20 *N. Y.*, 197; *Clark* agt. *Gilbert*, 26 *id.*, 279).

As a general rule, if a contract is so far personal that the representative of one of the parties to it is not responsible in damages for refusing to complete its performance, the representative of the other party is not so responsible for a like

failure, in the absence of evidence of intention to bind the representative. Evidence of such intention may be furnished by the terms of the contract, or implied from its nature. This contract did not, in terms, bind the representatives, nor can it be fairly inferred from its nature, that the parties intended to continue it beyond the life of either. The business in reference to which it was made depended largely upon the reputation and personal management of both parties. Without express power conferred by will, the business could not be continued by the representative, except for such period, and in such manner as might be necessary to close it *Steadman* agt. *Fielder*, 20 *N. Y.*, 437 ; *Bolinbroke* agt. *Kerr*, *Law R.* [1 *Exch.*], 222 ; *Williams Exrs.* [7th ed.], 1791). Nor was the business of such a character that its continuance after the death of O'Hara could have been in the reasonable contemplation of the parties.

In *Taylor* agt. *Caldwell* (3 *B. & S.*, 826), BLACKBURN, J., said: "There are authorities which we think establish the principle that when, from the nature of the contract, it appears that the parties must, from the beginning, have known that it could not be fulfilled, unless, when the time for the fulfillment of the contract arrived, some particular specified thing continued to exist, so that, when entering into the contract, they must have contemplated such continuing existence as the foundation of what was to be done; then, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused, in case before breach performance becomes impossible, from the perishing of the thing, without default of the contractor." This language is approved in *Dexter* agt. *Norton*, (47 *N. Y.*, 65); also in *Robinson* agt. *Davison, Law R.* [6 *Exch.*], 275.

In *Farrow* agt. *Wilson* (*Law Reports*, 4 *C. P.*, 744), Farrow contracted to serve Pugh as a farm bailiff, for at least six months, at weekly wages. During performance, Pugh died, and his administrator refused to continue Farrow's employment. WILLIS, J., said: "In this case, our judgment is for the

Babcock agt. Goodrich.

defendants. Generally speaking, contracts bind the executor or administrator, though not named. Where, however, personal considerations are of the foundation of the contract, as in cases of principal and agent, and master and servant, the death of either party puts an end to the relation, and, in respect of service after the death, the contract is dissolved, unless there be a stipulation, express or implied to the contrary. It is obvious that, in this case, if the servant had died, his master could not have compelled his representatives to perform the service in his stead, or pay damages, and equally, by the death of the master, the servant is discharged of his service, not in breach of the contract, but by implied condition."

This case differs from the one at bar, in that a farm bailiff is a kind of an agent, having care of lands — a land steward (*Wharton's Law Dic.; Bouvier's Law Dic., title Bailiff*), and all authorities agree that the relation of principal and agent is dissolved by the death of either.

In *Dickinson* agt. *Callahan* (19 *Penn.*, 231), it is said: "No one can trace up this branch of the law very far without becoming entangled in a thicket, from which he will have difficulty in extricating himself." '

In the case last cited, the contract was to sell and deliver all the pine lumber which the vendor could manufacture at his saw mill during five years, at an agreed price per thousand. During performance, both parties died. It was held a personal contract, by which the representatives were not bound. This case seems to have been followed in Pennsylvania. (*Bland* agt. *Winstead*, 23 *Penn.*, 316.) This case is in direct conflict with *Wentworth* agt. *Cook* (10 *A. & E.*, 42), which was a contract for the delivery of slate during several years, which was held to bind the representatives. Many cases might be cited, but they would only serve to illustrate the truth of the remark above quoted from 19*th Penn.*, 231. A rule applicable to all cases, cannot be extracted from the reported cases, and the decision of each case must depend upon its own circumstances. I think the contract did not establish anything more than a

Babcock agt. Goodrich.

personal relation between the parties, and that nothing more can be fairly inferred from the nature of the contract.

No point was made on the argument, by the defendant, upon the exception taken to the ruling permitting the plaintiff to testify in regard to certain transactions.

The conclusions of law of the referee are set aside, and judgment is ordered upon the facts (which are undisputed) in favor of the defendant, with costs.

APPEAL by plaintiff from judgment in favor of defendant and setting aside report of referee.

PER CURIAM.— The single question presented on this appeal is the nature of the contract made between the plaintiff and the defendant's testator and the relation of the parties thereunder. If the contract was founded on personal considerations and had reference to their personal qualities and capabilities and constituted the relation of master and servant terminable at the death of either party, the determination by the special term was correct. We have examined the authorities cited, and are satisfied with the reasoning and conclusion of Mr. justice FOLLETT in his opinion upon which this judgment was founded. The contract was purely personal and was liable to be terminated by the death of either party to it. The death of O'Hara therefore justified his executor in ending the contract and refusing further to go on in its performance.

The judgment should therefore be affirmed with costs.

NOTE.— The foregoing opinions, though slightly ancient, not having been reported, are deemed worthy of preservation.—[ED.