GEORGE F. NIXON, Respondent, *v.* AQUILINO ZURICALDAY et al., Appellants.

To bring a case within the rule that where an agreement is personal, depending upon the learning, skill or other characteristic of the contracting party, the duty of performance rests upon him individually and may not be deputed to another, it must appear from the contract itself, or it must inevitably suggest that a personal confidence or trust was reposed in him.

Plaintiff, who was about to offer a quantity of dates for sale at public auction, agreed with defendants that if the latter purchased at the sale 4,000 boxes plaintiff would allow them one-eighth of a cent per pound; if they purchased 8,000 boxes one-fourth of a cent. Upon the sale

defendants bid off 3,942 boxes, and one E. 4,368 boxes. The bills for the whole were made out to defendants. In an action to recover the purchase price defendants claimed an allowance of one-fourth of a cent per pound. It appeared that defendants and E. had previously made purchases on joint account, and that E. had an interest in the transaction in question and attended the sale for the purpose of purchasing on defendants' account. The trial court directed a verdict for the full purchase price on the ground that the agreement for an allowance was founded on a confidence reposed in defendants and created a personal trust to be discharged only by them personally, or by the authorized and announced use of their names at the sale. *Held,* error.

(Argued December 19, 1894; decided January 15, 1895.)

Appeal from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made July 2, 1893, which affirmed a judgment in favor of plaintiff entered upon a verdict directed by the court, and also affirmed an order denying a motion for a new trial.

The plaintiff sued to recover the price of 8,310 boxes of dates; which were sold at public auction, on November 4th, 1892, and of which the defendants were alleged to be the purchasers. It was alleged in the complaint that the plaintiff and defendants had agreed that the former should make an allowance of one-eighth of a cent per pound on purchases by defendants of not less than 4,000 boxes, and one-quarter of a cent per pound on purchases of not less than 8,000 boxes, and that there should be no brokerage, or allowance, on purchases made through brokers. The plaintiff alleged a purchase of 3,942 boxes by the defendants at the sale and, also, their further purchase of 4,368 boxes, but that the latter was effected through a broker. The whole purchase price, without any allowance, was demanded. The answer admitted the purchase by the defendants of the 8,310 boxes; but put in issue the other allegations respecting the agreement and the purchases, and alleged that the plaintiff's agreement was, simply, that if there should be purchased through the defendants, at least, 4,000 boxes of said goods, etc., an allowance of one-eighth of a cent per pound should be made on such purchase, and if such purchase should be not less than 8,000

boxes thereof, then such allowance should be at the rate of one-quarter of a cent per pound on the entire purchase. It alleged that the defendants had tendered, and were willing to pay, the purchase price, less the amount due them by way of allowance, and asked that they be adjudged entitled to the allowance. Upon the trial the plaintiff offered no proof whatever as to the agreement between himself and the defendants; but contented himself with proving through the auctioneers the sale of the dates, and putting in evidence bills made out by the auctioneer to the defendants. It appeared by his testimony that the goods in question were auctioned off in lots, partly to the defendants and partly to one Elias; but that, immediately after the sale, the bills for them were all made out to the defendants as the purchasers. On the part of the defendants, Zuricalday & Co., one of that firm testified concerning the agreement and said that the plaintiff proposed to allow him the percentages mentioned, if he purchased up to 4,000 or 8,000 boxes at the sale. Elias, it appears, had been previously interested on joint account with the defendants in purchases of similar goods, and had an interest in the transaction in question. He and one of the defendants attended the sale for the purpose of buying for the defendants' account. There was no proof that he acted as a broker in the transaction and it was not the fact. At the conclusion of the trial, the trial judge directed a verdict for the plaintiff for the whole amount of the purchase price and the defendants excepted to his direction. He subsequently denied a motion for a new trial on his minutes. On appeal the judgment entered upon the verdict was affirmed by the General Term, and the defendants have appealed to this court.

Further facts are stated in the opinion.

*Emmet R. Olcott* for appellant. It was no part of the stipulation respecting the allowances that the defendants should attend the sale and bid in their own name. (*McCluskey* v. *Cromwell*, 11 N. Y. 593, 601; *Reynolds* v. *C. F. Ins. Co.*, 47 id. 596; *Newell* v. *People*, 7 id. 96; *Lister* v. *Wind-*

*muller*, 20 J. & S. 407.) No discrimination can be made against the defendants on the theory that the agreement was illegal. (*Brexwell* v. *Christie*, 1 Cowp. 395; *Traughton* v. *Johnson*, 2 Hayw. 328; *Williams* v. *Bradley*, 7 Hirsh, 54.)

*C. N. Bovee, Jr.*, for respondent. The contract in question was personal and unassignable. (*Cornell* v. *Cornell*, 96 N. Y. 108; *Lacy* v. *Getman*, 119 id. 109.)

Gray, J. The theory upon which the learned trial judge directed the verdict for the defendants, as we learn from his opinion, was that the plaintiff's agreement to make an allowance to the defendants upon their purchases at the sale, " was founded on a confidence reposed in the defendants, and created a personal trust, which could be discharged only by the personal acts of the defendants, or by the authorized and announced use of their names at the auction sale." This theory of the relation of the parties he rested upon the familiar rule in equity, that when the agreement is personal, depending upon the learning, skill or other characteristic of the contracting party, he alone can enforce performance.

We cannot, however, agree with the learned judge in his application of this rule to the case at bar. He assumes a state of facts which the evidence fails to disclose. If we take the case as made by the plaintiff, it proved nothing concerning the agreement alleged. It established, in fact, a sale through the auctioneer to the defendants; although the evidence of the auctioneer showed that some of the lots were bought for defendants by a person named Elias. For the defendants, the agreement was shown, by the testimony of one of them, to have consisted merely in the plaintiff's proposition to him that if he would purchase up to 4,000, or to 8,000 boxes at the sale, he would allow him one-eighth of a cent per pound on the former amount, or one-fourth of a cent on the latter amount. The agreement was in parol and its exact nature was issuable under the pleadings; but all we know of it is from the defendants' testimony. Such an agreement does not

bear the impress of an engagement, so personal in its nature as to have devolved the duty upon the defendants of actually doing the bidding at the sale. It is possible that the plaintiff may have had the notion, when making his proposition, that the personal attendance of the defendants and their bidding would stimulate other bidders, or otherwise better the market. But if such was the underlying consideration in his mind, there should have been some evidence of it and it should not have been left to assumption alone. We might indulge in more than the one assumption, in the face of the meagre evidence concerning the parties and their plans. How are we to assume that the fact of the defendants' bidding in person at the sale would be any more potent a factor in the market, than if they procured the aid of another person, interested with them in their ventures, as Elias was, to bid for them during the sale? The record is silent. We do not know from the evidence that the defendants occupied any such position in the peculiar market, as to give them any prestige. As a matter of fact, the conditions of the plaintiff's proposition were met by the actual purchase of over 8,000 boxes of dates by the defendants at the auction sale. Elias was not a broker in the transaction. He was, and he had been for some time, interested with defendants on joint account in their ventures. There was nothing in the transaction with the plaintiff, which debarred Elias from continuing to participate with the defendants in the proposed purchase, as he had done in the past. It was easy for the plaintiff to have limited, and to have precisely defined his engagement towards the defendants, with respect to their purchases of his goods. But he did not do so, and the fact is that the defendants did purchase over 8,000 boxes; which entitled them to the allowance agreed upon by the plaintiff. There was no question of any assignment of the contract, or of bringing in a third party. In order that a contract shall bear the impress of being a personal contract, or one which involves personal considerations, something must appear from it, or it must inevitably suggest that a personal confidence, or trust, was reposed in the person contracted with. Such was

the case in *Stevens* v. *Benning* (1 Kay & J. 168). In that case, Vice Chancellor WOOD suggested a case which aptly shows how the inference of a personal trust can be made from the transaction itself. He says: " Take, for instance, the case of a merchant in the West Indies consigning goods to a person in London, for the purpose of having them sold there, such person alone would have a right to sell them." No such element can be presumed to enter into the transaction in question. There was no such duty, necessarily or inferentially, devolved upon the defendants, as to permit the court to presume that any personal confidence was involved, or that the exercise of some personal skill on their part was expected. In view of the manner of a sale at auction, and what would ordinarily be done, that would be an irrational presumption. In the case of *Spalding* v. *Rosa* (71 N. Y. 40), cited by the learned trial judge, the defendants' contract to furnish the " Wachtel Opera Troupe " could only be fully performed by the appearance of the great tenor singer himself; who gave his name to the company and whose presence was of the essence of the contract, as of the success of a performance. So in *Wolfe* v. *Howes* (20 N. Y. 197), the contract with the mechanic contemplated his personal services; because, not only it was " evident, both from the nature of the business and the amount of compensation agreed to be paid him;" but, as Judge ALLEN adds: " It is also manifest from the evidence on both sides. The business of pot making required skill and experience. * * * The execution of the work required his constant and personal supervision and labor."

The judgment of the General Term should be reversed, and a new trial ordered; with costs to abide the event.

All concur, except HAIGHT, J., not sitting.

Judgment reversed.