Clark *v.* Gilbert.

The judgment must be reversed and a new trial granted, costs to abide the event.

[NEW YORK GENERAL TERM, September 17, 1860. *Sutherland, Bonney* and *Allen,* Justices.]

. CLARK, executor &c., *vs.* GILBERT.

G. and three others, his associates, having a contract with the United States government for the construction of a dry dock, in California, with a lease of the same from the government, for the repair of merchant as well as government vessels ; and being the owners of a partial right to build a basin and railway to use in connection with such dock; and being also in treaty with the government for a contract to construct the basin and railway ; in which enterprises the interest of G. was one fourth part; H., by a contract in writing between him and G., dated Feb. 8, 1853, agreed to go to California and take charge of G.'s interests in those contracts, and of all business connected with them; and G. agreed to pay him, for such services, one third of all the profits that should be paid to G., payment to be made to H. as fast as said profits should be ascertained and derived from the business. G. also agreed to pay the passage of H. out to California, and to pay him a salary of $1000 a year, &c.   The contract also provided for the payment to H., in case G. and his associates should sell their interest in the contracts, &c. of one third of the profits earned by the quarter interest of G. up to the time of sale, and one third of the profits derived from such sale, &c.   H. proceeded to California, where he arrived in March, 1853, and was employed by all the associates, first as book-keeper at $1200 per annum, &c., and then as agent at $2500 per annum, &c.   He continued in the employ of the associates until his death, in July, 1856. The contract for the building of the dock was made in 1851, and the dock was ready for use in November, 1853, and completed in 1855, and taken possession of by the government in November, 1856.   The contract for the construction of the basin and railway was made in July, 1854, and the work then commenced, and before the death of H. all the materials for the structure had been collected, and most of the work had been done.   The profits on both contracts and the business of docking vessels, were large, but it did not appear that there was a profit, or if any, what profit, on the first contract.   G. received for his share of the profits $84,920.90, the greater part of which was received after the death of H., and upon the basin and railway contract.

Clark *v.* Gilbert.

In an action by the executor of H., upon the contract made between H. and G. to recover for the services performed by H. under the same; *Held* that H. was not a partner, nor entitled to the rights of a partner; but the contract was one of hiring and service, and the relation of principal and agent was created by it.

*Held also,* that the two contracts, and the use of the dock under the lease from the government, were distinct enterprises, not connected with each other, and that the plaintiff was only entitled to recover, 1st. The share agreed upon of the profits in building the dock; 2d. A like share of the profits arising from the use of the dock up to the time of the death of H.; and 3d. What H.'s services were reasonably worth to G. in supervising and looking after his interests in the construction of the basin and railway, which was a service entirely distinct from the service rendered the associates as their book-keeper and agent, and to be compensated in reference to their actual value, and distinct from the compensation received from the associates.

That if the three enterprises could not properly be treated as distinct from each other, in ascertaining the amount due to the plaintiff, then that the plaintiff was entitled to recover the value of the services of H. for the whole time that he was in the employ of the defendant, deducting the payments received by him from the latter, for such services.

*Held, also,* that as the profits to be earned had not, either at the time of making the contract or at the time when it terminated by the death of H. and the right of action accrued to his representative, any determinable value, or indeed any existence, they could not be resorted to as the measure of the plaintiff's recovery.

Where the performance of a contract for services has been prevented by the sickness or death of the party hired, or other providential interposition, such party, or his personal representative, can only recover what his services are reasonably worth; and if they have been worthless he can recover nothing. The contract price for the completed service does not measure the compensation for the partial and interrupted service.

THE plaintiff, as executor of William A. Heermans, deceased, sued upon a special contract, to recover for services performed by the testator for the defendant in California. The contract was dated February 8, 1853, at which time the defendant and three others, his associates, had a contract with the United States government for the construction of a dry dock at Mare Island in California, with a lease of the same from the government for the repair of merchant as well as government vessels, and were the owners of a partial right to build a basin and railway to use in connection with such dock. They were also in-treaty with the government for a

contract to construct for the government the basin and railway. The interest or share of the defendant in these enterprises was one fourth part. By the contract in suit the testator agreed to go to California and take charge of the defendant's interests in these contracts, and all business in any manner connected with them. The defendant "for and in consideration of the services well and truly performed of the said Heermans in going to California and taking charge of the one quarter interest of the said Gilbert in the above mentioned contracts, and also of his interest in all other contracts that may be made, or business in any manner connected with said contracts or works," agreed to pay to said Heermans, "his heirs, administrators and assigns, one third of all the profits that may or shall be paid to said Gilbert for the aforesaid business, and to make payment to said Heermans as fast as said profits shall be ascertained and derived, or in any way drawn from the business." The defendant also agreed to pay the passage of the testator out to California, and to pay him a salary of one thousand dollars a year, together with board and washing at Mare Island.

Provision was made in the contract to the effect that if the defendant and his associates should sell the whole or any part of their interest in the contracts, works or business, the said testator should receive one third of the profits earned by the quarter interest of the said Gilbert, up to the time of sale, and one third of the profits that should be derived from such sale, and continue to have one third of the profits earned by the remainder of said quarter after any portion should be sold. The testator proceeded to California in pursuance of the contract and under instructions from the defendant, and after a time was employed by all the associates, first as book-keeper at $1200 per annum, and afterwards as agent at $2500 per annum, with board. The testator arrived in California in March, 1853, and remained at his post until April, 1856, when he went to the Sandwich Islands for his health, having been seriously ill for some time before. He returned to California in July, 1856, and died on the 27th day of that

Clark *v.* Gilbert.

month. The contract for building the dock was made in 1851, and the dock was ready for use in November, 1853, and fully completed in 1855, and was taken possession of by the government in November, 1856. The contract for the construction of the basin and railway was made in July, 1854, and the work immediately commenced, and before the death of the testator all the materials for the structure had been collected, and most of the work had been done. Fifteen to twenty thousand dollars, only, was then required to complete it, and it was completed and accepted by the government in the fall or early in the winter following. The profits on both contracts and the business of docking vessels were large, but it does not appear that there was a profit, or if any, what profit, on the first contract. The defendant received for his share of the profits $84,920.90, the greater part of which was received after the death of Heermans, and upon the basin and railway contract. The action was tried by a referee, who gave judgment for the plaintiff for one third of the defendant's share of the profits on the two contracts and the use of the dry docks under the lease, in the proportion which the time while Heermans was employed under his contract with the defendant, before his death, bore to the entire time taken to complete the works after the making of the contract by Heermans and the defendant, and for 41-45ths of the profits. The judgment was for $28,449.66; and from that judgment the defendant appealed.

*S. J. Tilden* and *Thomas Nelson,* for the appellant.

*W. Clark,* in person, and *Paris G. Clarke,* for the respondent.

*By the Court,* ALLEN, J. Conceding the measure of damages established by the judgment in this action to be just and correct in principle, the learned referee erred in its application. He treated the two contracts, and the use of the dock under the lease from the government, as a single adventure, while although the same parties were interested in each and to the same extent, there was no manner of connection be-

tween them, and there was no connection in fact between them. The making of the contract for the dry dock preceded that for the basin and railway by three years, and the former was nearly completed before the latter was undertaken, and the use of the dry dock under the lease commenced, necessarily, after the completion of the structure, and was enjoyed without reference to the basin and railway. If, for the reason that the lease of the dry dock was simultaneous with or a part of the contract for the building of the dock, it should be thought that the contract for building and the use of the dock under the lease should be treated as a single transaction, as between the parties to this suit, the case will not be varied; for then the contract for the basin and railway must stand by itself as an independent transaction. Then upon the rule established by the referee for adjusting and settling the rights of the parties and measuring the damages of the plaintiff, the profits of each enterprise should have been ascertained and the plaintiff would have been entitled to receive, 1st, one-third of the profits upon the defendant's one-fourth of the dry dock contract; 2d, a like proportion of the profits arising from the use of the dock; 3d, a like share of the profits upon the construction of the basin and railway, in the proportion which the time while the testator was employed upon the work bore to the entire time occupied in performing the contract. The whole work occupied about two years, only about twenty months of which had elapsed at the time of the death of the testator, and his proportion would have been about 20-24ths, instead of 41-45ths, as awarded by the referee. Again; there should have been no abatement from the profits arising from the construction of the dock, for its use, by reason of the death of the testator. Those profits had been earned and were easily ascertained, and the plaintiff's testator would have been entitled to them if the basin and railway contract had never been performed, or if there had been a loss after the death of the testator, instead of a profit.

Clark *v.* Gilbert.

But the more serious question is as to the right of the plaintiff to resort to the profits of the contract for the construction of the basin and railway, when fully performed, as the measure of his recovery for the services of his testator in and about their construction up to the period of his decease. If it could be established that the testator of the plaintiff by the terms of the contract with the defendant became a partner with him in the work and business, doubtless his representative would be entitled to an account of the partnership business up to the time of his death, and in the absence of any better or more reliable data to ascertain the value of the interest of the deceased partner, the rule adopted by the referee might be allowable. But it is not and cannot be claimed that Heermans was a partner or in any way a tenant in common with the defendant. The contract was one of hiring and service, and the relation of principal and agent was created by it. Heermans was employed as the agent of the defendant to look after and manage his interests in a particular business, and was to receive from his employer a fixed salary, and in addition thereto a portion of the profits of the business. He was not liable for any losses, and could not have been liable to third persons upon the contracts of the associates. He was not therefore a partner, or entitled to the rights of a partner. (*Vanderburgh* v. *Hull*, 20 *Wend.* 70.) The profits were only referred to as a measure of compensation, and gave the clerk and agent no interest in the capital stock of the concern. (*Burckle* v. *Eckhart*, 1 *Duer*, 337 ; *S. C.* 3 *Com.* 132.) The contract was for the personal services of the plaintiff's testator, and could not be performed by substitute, either before or after his death. His death, therefore, put an end to the contract; but as it was not rescinded by the act or default of the testator, but was terminated by the act of God, the servant did not forfeit his right to compensation for the services actually performed under the contract of hiring. And as the defendant is not in fault, he is only liable to pay the fair value of

the services of which he has had the benefit. Had he discharged the testator without cause, he might have been liable for all that the testator would have made or earned by a full performance of the contract. As it is, the testator having performed services under a contract, the full performance of which is providentially and without the fault of either party prevented, the party performing the services cannot recover upon the contract, for the reason that performance on his part is a condition precedent to a recovery, and he must necessarily resort to a *quantum meruit.* That he has not lost his right to all compensation is well established upon principle as well as by authority. (*Wolfe* v. *Howes*, 24 *Barb.* 174; *S. C.* 20 *N. Y. Rep.* 197.) In the absence of any agreement between the parties, as to price or compensation, the question as to how much the laborer deserves to receive must be determined upon evidence of the nature and value of the services. If a special contract for service has been fully performed by the servant, and the compensation has been fixed by the contract, an action upon the *quantum meruit* may be brought, and the contract will be evidence to regulate the recovery. So in a case like this, where full performance has been prevented by sickness or death, the contract or agreement of the parties is competent evidence, and when the compensation is so fixed and regulated by the contract that it can be apportioned without injustice to either party, the compensation agreed upon may well be taken as that which the party reasonably deserves to receive; as where the wages agreed upon are a specified sum per month or year, and one month or one year is as valuable to the employer as any other month or year, or where the labor is to be compensated by any other known and definite standard, and the amount earned at any given time can be ascertained by measurement or arithmetical calculation. (*Jones* v. *Judd*, 4 *Comst.* 411.) But it does not follow that the same or any similar rule can be adopted when the compensation agreed upon is not specific, but uncertain and depending upon con-

tingencies andfinal results which cannot be definitely ascertained and known during the progress of the work, or before the completion of the term of service, and when the agreement as to compensation is such as to contemplate the continued service unto the end as a means to accomplish the result upon and in reference to which the compensation is to be measured.  Had Heermans been upon a yearly or monthly salary, and died in six months or one month after reaching California, the fair value of his services at the rate agreed upon would have been easily ascertained, at the time of his death ; but upon a like termination of the service under a contract to share in the profits, there would have been no way to ascertain his compensation under the contract, and he must either upon conjectural and unreliable testimony establish the value of the unearned profits, or the value of his contingent interest in what might be earned, or await the final issue of the enterprise.  His compensation as upon a *quantum meruit* was payable instantly after his death, and his representative was not bound to await the closing up of the contracts with the government or the business between the associates; and as the profits, or whether there were or would be any profits, was not and could not be then known, and the defendant—conceding that upon the work and contracts then done and finished there was a profit—was not bound to pay in advance of the actual receipt of the profits, it follows that the profits could not in an action then brought have been resorted to as evidence of the *quantum meruit.*  The rights of the parties are mutual, and as the representative of the deceased might at once have brought his action for the value of the services, the defendant has the right to claim an adjustment of the damages as if the action had then been brought and the work had since been completed.  The plaintiff cannot, by electing as to the time of bringing his action, vary the measure of damages. Another consideration showing that it would be unreasonable to resort to the profits as shown by the actual result accom-

plished months after the death of the testator, as a measure of damages, is that the employment of the deceased was with a view to secure the profitable closing up of the contract and business, and because it was supposed his skill and business talents would contribute to that end, and the contract necessarily contemplated a continuance of the service to the end to secure a participation in the result. Upon what particular part of the work the profit was made cannot be known. *Non constat* it was all made after the death of Heermans, and possibly because the work fell into other hands. In *Lisk* v. *Sherman,* (25 *Barb.* 433,) the contract of service had been fully performed by the plaintiff, but the agreement as to compensation was void by the statute of frauds. It is well settled, however, that in such cases the contract may be resorted to as evidence of the value of the services and to control the recovery. (*Burlingame* v. *Burlingame,* 7 *Cowen,* 92. *Fort* v. *Gooding,* 9 *Barb.* 371. *Thomas* v. *Dickinson,* 2 *Kern.* 364.) But in the case cited it was held that the contract in such case could only be resorted to to determine the value of the services when the land, property or other thing to be given or received in compensation was fixed and determined in its nature and character, and was referred to by the parties, and possessed at the time of making the contract, a determinable value, and that it is only in such cases it can be said that the contract furnishes a measure of damages. The case before us is within the principle thus decided, and as the profits to be earned had neither at the time of making the contract nor at the time when it terminated by the death of Heermans and the right of action accrued to his representative, any determinable value, or indeed any existence, they cannot be resorted to as the measure of the plaintiff's recovery. (*And see Ham* v. *Goodrich,* 37 *N. H. Rep.* 185.) The language of the cases where the performance of the contract has been prevented by the sickness or death of the party, or other providential interposition, is peculiarly guarded, except perhaps *Jones* v. *Judd,* decided by a divided court. But all, I

HARVARD
LAW SCHOOL
LIBRARY

think, regard it settled that the laborer or his representa-tive can only recover what his services are reasonably worth; and if they have been worthless can recover nothing, and that the contract price for the completed service does not measure the compensation for the partial and interrupted service. In *Fuller* v. *Brown,* (11 *Metc.* 440,) the plaintiff was under a contract to work by the month, and left the service on account of sickness. He recovered the contract price for the time he worked. But no question was raised as to the measure of damages, and the court cautiously and in terms refrained from expressing an opinion as to the proper compensation in such cases. *Fenton* v. *Clark* (11 *Verm. Rep.* 557,) was a contract by the plaintiff to work five months at ten dollars a month, and the plaintiff became disabled by sickness, and was allowed to recover *pro rata* for the time he had worked. He recovered as upon a *quantum meruit,* and there was no reason for departing from the contract price. Prof. Parsons, speaking of the contract of hiring, says: "But if prevented from performing the stipulated amount of labor by sickness or similar inablility, he (the servant) may recover pay for what he has done, on a *quantum meruit.*" (1 *Pars. on Cont.* 524; *and see Dickey* v. *Linscott,* 20 *Maine Rep.* 453; *Seaver* v. *Morse,* 20 *Verm. Rep.* 620.) It is nowhere held that the servant can recover ratably the contract price for the service performed. In *Fahy* v. *North,* (19 *Barb.* 341,) the recovery was restricted to the actual value of the service performed, and the recovery for the partial performance was at the rate of $12 per month, while the contract price was $12.50 per month. The rule established, or treated as established, by *Wolfe* v. *Howes,* (20 *N. Y. Rep.* 197,) is that the plaintiff seeking to recover for services performed under a contract, the full performance of which was prevented by the death of the laborer, could recover what the services were reasonably worth, not exceeding the contract price, and could only recover the reasonable value of the services. Allen, J. says : " The plaintiff was entitled to recover the full value of the services of the testator,

not exceeding the rate of compensation secured by the terms of the contract." And Johnson, J. concurred ; observing, " that it was material that the defendants had received actual benefit from the services of the plaintiff's testator, and that quite a different question would be presented by a case where the services actually rendered should prove valueless." The learned judges repudiated the idea that the unperformed contract regulates the compensation for services rendered in partial performance, when the contract is terminated without the fault or act of either party. It may limit the amount, and in some cases furnish a reasonable measure of damages, but not in a case like this, where the compensation was contingent and uncertain in amount. (*See Smith* v. *Thompson,* 8 *C. B.* 44.) I am of the opinion that the referee erred in the measure of damages, and that the plaintiff was only entitled to recover, 1st. The share agreed upon of the profits in building the dock ; 2d. A like share of the profits arising from the use of the dock up to the time of the death of his testator ; and 3d. What his services were reasonably worth to the defendant in supervising and looking after his interests in the construction of the basin and railway, which was a service entirely distinct from the service rendered the associates as their book-keeper and agent, and to be compensated in reference to their actual value, and distinct from the compensation received from the associates. If I am wrong in supposing that the three enterprises should be treated as distinct from each other, in ascertaining the amount justly due to the plaintiff, then the plaintiff should recover the value of the services of the testator for the whole time that he was in the employ of the defendant, deducting the payments received by him of the defendant for such service.

In either view the judgment must be reversed, and a new trial granted, costs to abide the event.

[NEW YORK GENERAL TERM, September 17, 1860. *Sutherland, Bonney* and *Allen,* Justices.]