# JUNE TERM, 1888.

Erastus W. Bush, Survivor, etc., v. Thaddeus C. Brooks and Amos Root.

*Pleading—Recovery under common-count declaration—Extra work caused by fraud of defendants—Right of recovery for discussed—Evidence—Charge of the court.*

This is an action of *assumpsit* to recover for labor performed and materials furnished by *subcontractors* in the construction of a portion of the earth-work of a railroad road-bed, which contract is claimed to have been fully performed, as also extra work not therein provided for by reason of the alleged fraud, deception, and deceit of the contractors. The declaration was upon the common counts, amplified by a notice served in response to a demand for a bill of particulars, in which the plaintiff stated in substance:

1. That his demand was for damages and compensation wholly based on defendants' non-performance of said *subcontract*, which *he* claimed to have fully performed to the acceptance of defendants and said railroad company.

2. That a detailed statement of the work done in such performance could only be made from measurements and computations furnished to defendants by the engineer of the company, which they had refused to furnish to plaintiff.

3. That plaintiff would show mistakes of fact by the engineers in laying out and measuring plaintiff's work; combinations between said engineers and defendants in locating, laying out, overseeing, and measuring such work; and an agreement with the *chief* engineer to favor defendants, in ignorance of which the plaintiff agreed to be bound by his official action; also the total incapacity of the engineers to rightfully discharge their duties under the contract, by reason of their habitual intoxication while engaged in such attempted performance.

The defendants claimed—

1. A full performance on their part of the *subcontract*, and an over-payment of plaintiff.

2. That the change of line complained of by the plaintiff from the route referred to in the contract was a right reserved by the company under the *original* contract, and defendants had the right to have the extra work thereby occasioned done under the *subcontract*, of all of which plaintiff had notice before its performance, and had never made any claim for extra compensation on that account, or refused to do the work at the contract price.

3. That the change of line was not within defendants' control, and that profiles of the same were furnished as fast as staked out, and that no complaint was ever made of it.

The case was tried upon these opposing theories, and, in affirming the judgment recovered by plaintiff, the Court held as follows:

1. Where a contract has been executed by the plaintiff, and nothing remains but payment to be made by the defendant, or where the plaintiff is at liberty to treat the contract as terminated, although only partly performed, or where he has not performed it in the manner or at the time agreed upon but what he did was beneficial to and has been accepted by the defendant, he may declare upon the common counts.

2. *Assumpsit* lies upon the common counts for labor performed and materials furnished under a written contract not binding upon the plaintiff by reason of the fraud and deceit practiced by the defendant, and he may recover in the *same* action for *extra* work and materials, which he was induced to perform and furnish by means of *such* fraudulent practices, which recovery will not be limited by the contract price.

3. A conversation between the chief engineer and plaintiff relating to that part of the work over which he had complete control, acting for defendants, although not in their presence, was admissible.

4. The refusal to strike out plaintiff's testimony in support of his charges of fraud was not error, there being sufficient proof upon that subject to be submitted to the jury, which fact made other testimony objected to competent and relevant in connection therewith.

5. There is a great difference between " an action for non-performance of a written contract by defendants " and an action to recover compensation for work done and materials furnished to defendants, by reason of a fraudulent contract made by them, and a failure to perform by a fraudulent execution of it, the latter of which is stated in plaintiff's bill of particulars.

6. The neglect of the defendants to furnish *monthly* estimates was a breach of the contract on their part, and their failure to furnish the *final* estimate provided for gave the plaintiff the right to recover what his labor and materials were worth.

7. He who claims the benefit of a contract giving him great discretionary power and containing arbitrary and despotic provisions, and asks to have them enforced, must show complete performance on his part, and, failing so to do, can claim nothing but exact justice in his dealings with the other party, and it is the duty of the court to see that this rule is enforced.

8. The portions of the charge excepted to (see opinion) are held free from error for which the judgment should be reversed.

Error to Jackson. (Gridley, J.) Argued April 3, 1888. D cided June 8, 1888.

*Assumpsit.* Defendants bring error. Affirmed. The facts are stated in the opinion.

*Gibson & Parkinson* (*Erastus Peck,* of counsel), for appellants, contended:

1. That the declaration should have been special; citing *Hosmer v. Wilson,* 7 Mich. 303; *Butterfield v. Seligman,* 17 Id. 95; *Begole v. McKenzie,* 26 Id. 470; *Curtis v. Railway Co.,* 32 Id. 291; *Moore v. Nason,* 48 Id. 300; *Phippen v. Morehouse,* 50 Id. 537; *Pierson v. Spaulding,* 61 Id. 94; and distinguishing *Wright v. Dickinson,* 67 Id. 580, and *Nugent v. Teachout,* Id. 575, 576.

2. That the frauds complained of could not be waived and *assumpsit* brought; citing Cooley, Torts, 91; *Watson v. Stever,* 25 Mich 386; *Tolan v. Hodgeboom,* 38 Id. 625; but if so, the declaration must be special; citing *Tregent v. Maybee,* 54 Mich. 226; *Farwell v. Myers,* 59 Id. 183.

*Norris & Norris,* for plaintiff, contended as stated in the opinion, citing the authorities therein referred to.

SHERWOOD, C. J. This is an action of *assumpsit* brought by the plaintiff against the defendants, in 1884, in the circuit court for the county of Jackson. The declaration was upon the common counts, accompanied by a bill of particulars, and claimed damages in the sum of $50,000. Defendants

pleaded the general issue, with notice of set-off, and gave a bill of particulars thereunder. The cause was tried by jury before Judge Gridley, in the Jackson circuit, at the February term, 1887, and resulted in a verdict for the plaintiff of $20,486.23. The defendants bring error, and ask a review of the case, and present 61 assignments of error for our consideration in asking for a reversal.

In 1882 the Grand Trunk Railway Company of Canada desired to build a road from the city of Jackson, through Jackson, Livingston, and Oakland counties, terminating at Ridgeway, in Macomb county. The corporation used in the construction of this road was organized in this State in 1875, and was known as the Michigan Air Line Railway Company. During the period of the dealings of these parties, its president, secretary, and general superintendent resided at Montreal. E. W. Meddaugh, the attorney for the company, resided in Detroit, and Henry Yates, its chief engineer, at Brantford, Canada. Yates had authority to let the contract for building the road, and in November, 1882, did let the contract for doing all the work in building the same, except laying the track, from Jackson to South Lyon, to the defendants. The contract was executed, and the specifications attached and signed by Yates, engineer, November 22, 1882. Under this contract the road was to be built "on a line designated on the map of the company to be filed in the counties" through which the roadway should be located.

On the first day of December, 1882, the defendants sublet to the plaintiff and John J. Palmer, now deceased, the construction of that portion of the earth-work upon said road on the line between South Lyon and Pinckney, a distance of about 18 miles, "as shown on profile No. 3." The work was to be done in strict accordance with the contract and the specifications thereto attached, which read as follows:

"This Agreement, made this first day of December, A. D. 1882, by and between T. C. Brooks & Co., of Jackson, Michigan, as parties of

the first part, and Erastus W. Bush and John J. Palmer, parties of the second part, *Witnesseth:*

"1. Said T. C. Brooks & Co. having contracted with the M'chigan Air Line Railway, a corporation organized under the laws of the State of Michigan, to prepare the road-bed for the railway of said company from Ganson street, in the said city of Jackson, to a point of connection at South Lyon, in the county of Oakland, with the Michigan Air Line Railway extended from Pontiac to the last-named place, said first parties hereby let to said parties of the second part, and said parties of the second part hereby agree to do and perform, all of the earth-work upon all that part of the line of said railway from South Lyon to Pinckney, about 18 miles, as shown on profile No. 3; all of which shall be done and performed in strict accordance with the provisions of this contract, and the specifications hereto attached, marked ' Exhibit A,' which is hereby made a part hereof.

"2. Said second parties hereby agree that they will protect and save said first parties harmless from all claims and costs of suit on account of trespasses committed by themselves, or their agents or servants, in and about the performance of this contract, and on account of materials and supplies furnished them, and the wages and board of their agents and employés.

"3. After the engineer of said company shall have staked out said earth-work, and tho culverts, bridges, cattle-passes, and fences pertaining thereto, and have made the necessary grade stakes and levels, said second parties shall verify the same for themselves, and shall have no claim for alleged inaccuracies of grade stakes or levels, or from losses of the same when once furnished.

"4. Said second parties shall begin said work within ten days from this date, and shall continuously and vigorously prosecute the same, without delays on account of accident, weather, or frost (except while the ground shall be so frozen as to make the carrying on of the work impossible), until the same is completed. They shall furnish all material therefor, and have the same fully completed in and by 'the following time, to wit: The first ten miles thereof (counting from the South Lyon end), on or before the first day of August, A. D. 1883, and the remainder thereof on or before August 15, 1883. Such second parties shall prosecute the work with sufficient rapidity from this date to the time of completion so that their degree of progress, at all times, shall show certainly their ability to fully complete the same by said fixed time. And it is hereby expressly agreed that the determination of the question whether their progress shows such ability shall be absolutely in the power of the said first parties. And said first parties shall have the right and privilege, whenever the inability of said second parties shall be so determined, to take charge of said work, and to complete and finish the same, at the cost and expense of said parties of the second part.

" 5. The land necessary for borrowing pits shall be furnished by said first parties, together with the right of access thereto.

" 6. Said first parties hereby agree to pay said second parties for the earth-work performed by them under this contract twenty-one and one-half (21½) cents per cubic yard, which shall be estimated for as follows: The engineer of said railway company shall make estimates of the work done by said second parties under this contract at the end of each month, and as soon as practicable thereafter a copy thereof shall be furnished to said second parties, and, within 20 days after the completion and delivery of said estimates, said first parties shall pay to said second parties the amount of said estimates, less 10 per cent., which shall be withheld by said first parties as security for the faithful fulfillment by said second parties of all their obligations under this contract. But it is expressly understood that, in case the Michigan Air Line Railway Company shall make default in any of its payments to said first parties, said first parties shall have the right to suspend the work or terminate this contract, by giving notice to said second parties, and shall not be liable to said second parties for any work performed after the service of such notice.

" 7. In case said second parties shall fail at any time to pay for materials, or for the wages or board of their employés or servants as the same becomes due, the said first parties shall be at liberty to pay the same, and in that event shall have the right to deduct the moneys so paid from any moneys due to second parties thereafter.

" 8. All the work done under this contract shall be measured in excavation, and there shall be no allowance for additional compensation for hauling the same.

" 9. Whenever said second parties, in performing said work, shall encounter any trees or timber suitable for fence-posts, ties, or any purpose for which timber can be used in the construction of a railroad, and the same is not removed by the owner of the land, they shall leave the same in convenient position for the use of said first parties. And whenever cattle-guards, or cattle-passes, or openings for any other purposes, are ordered by the engineer, the same shall be left by second parties in the embankment.

" 10. If delay is occasioned to said second parties by reason of any difficulty in procuring right of way, the time of such delay shall be added to the time within which said second parties are herein required to complete the work.

" 11. Immediately after the final completion by said second parties, of the work to be done by them under the contract, this engineer of the company shall make final inspection and measurements of the same, copies of which estimates shall be delivered to said second parties as soon as practicable thereafter; and upon the final acceptance of said work by the engineer, if the said parties of the second part shall have fulfilled all their obligations under this contract, they

shall be immediately paid the remainder due them, including the ten per cent. which shall have been withheld by said first parties, as hereinbefore provided.

"12. The term 'engineer,' as used in this contract and in the annexed specifications, shall be held to include, in addition to the engineer of the company, such persons as the engineer shall designate to perform any of the duties which are herein referred to him. The right of the engineer to so delegate his powers and functions in this contract named is hereby expressly reserved.

"13. The estimates and measurements of the engineer, and his decision in respect to any and all matters which by this contract and in the specifications annexed are referred to him, and all estimates, decisions, and measurements of persons so delegated by him, as in the next preceding paragraph provided, which he shall adopt and approve, shall be final and conclusive as between the parties hereto, and their several heirs, executors, administrators, and assigns; and there shall be no appeal therefrom, but all work done and materials furnished hereunder, and all settlements and payments, both progressive and final, shall be on the hypothesis as between the parties hereto and as to their rights hereunder, of the absolute accuracy of the engineer in the premises.

"14. The engineer of the company shall have the right at discretion to change any part of the location of the line, without any claim or right of claim by the said second parties for compensation or damages in consequence thereof.

"15. Said first parties shall have the right, at any time when they shall deem it necessary for their protection, to pay all bills for wages, board, and material, due from said second parties, directly to the persons to whom the same may be owing; and all payments so made shall be deemed payments made to said second parties on this contract.

"16. Said parties of the second part hereby further agree to clear and grub the land appropriated for said railway throughout its entire width, the work to be done in accordance with the specifications hereto attached applicable to that subject, for the sum of thirty-seven dollars and fifty cents per acre, to be estimated and paid for in the same manner hereinbefore provided for earth-work. The work contemplated under this clause is to be governed by all the conditions, and subject to all the regulations, hereinbefore provided for the government of earth-work.

"In witness whereof, the said parties have hereunto set their hands and seals the day and year first above written.

"In presence of

"T. C. BROOKS & CO. [L. S.]
"E. W. BUSH. [L. S.]
"J. J. PALMER. [L. S.]"

" EXHIBIT A.

" The general course of the railway is designated upon the maps in the general office of the company, but the engineer of the company may change or vary the same at any time, without giving any claim for damages to said second parties against said first parties ; and the said second parties shall, in all cases, save and keep the said parties of the first part harmless from any claim for damages arising from fire occasioned by the acts or carelessness of said second parties, their agents or employés, either to the property of said first parties, or said company, or that of adjacent property-owners.

" Stumps shall be cut close to the ground where embankments do not exceed two feet in height, and every stump must be thoroughly grubbed out in all excavations.

" The grading shall consist in the formation of a road-bed for a single-track railway of a width, at formation level on embankments, of 14 feet, and in the cuttings 18 feet, with uniform slopes of one and a half feet horizontal to one foot perpendicular.

" The general width of cuttings shall be 18 feet at subgrade; but, when the depth of the cutting or the quantity of water to be carried off requires it, the width shall be increased at the discretion of the engineer, either before or during the progress of the excavations.

" The work of grading is intended to comprise all necessary earth-work in connection with the formation of public or farm road crossings, approaches to bridges, ditches, and drains of all descriptions.

" Ditches at the foot of slopes in all cuttings, and catch-water and take-off drains, shall be excavated in such places and of such dimensions as shall be directed from time to time by the engineer. A berme of at least four feet shall be left on both sides at the foot of all embankments.

" Embankments shall be made of sufficient height and width to allow, in all cases, for subsidence, and shall, together with cuttings, be finished with a crowning in the center of at least six inches higher than at each side.

" Where gravel or sand suitable for ballast shall be found in cuttings, the same may be retained by order of the engineer; and when a surplus of material is found in excavation, the same shall be applied to the widening of the adjacent embankments, or wasted only at the discretion of the engineer.

" Where embankments are required to be formed across swamps of unsound bottom, a sub-structure of trees, logs, or brush shall be formed in such manner as shall be directed by the engineer before proceeding with the earth-work filling, for which said second parties shall be paid such just compensation as the engineer shall determine.

" Said second parties shall lay in the culverts of such material, at

such places, and in·such lengths as may be determined by the engi-
neer in charge, as the work progresses, for which second parties shall
receive such just compensation as the engineer shall determine; the
pipes to be furnished by said first parties or by the company.

"The land appropriated by the company shall be cleared through-
out its whole extent of all trees, stumps, logs, and other loose mate-
rial, all of which shall be burned within the company's limits. And
said parties of the second part shall in all cases be held responsible
for any damage arising from fire, when fired under their direction or
that of their workmen, either to the property of the company or to
that of adjacent land-owners."

It is for the work and labor, and materials furnished,
specified in said contract and performed by the plaintiff and
Mr. Palmer, when he was alive, that the plaintiff seeks to
recover in this case. The plaintiff claimed before the jury
that Bush and Palmer performed all the work and labor, and
furnished the necessary materials therefor, mentioned in the
contract for the defendants, and did a large amount of work
for the defendants by reason of changes made in the line of
said road not mentioned in the contract.

That the defendants fraudulently imposed said contract
upon the plaintiff and Mr. Palmer, and fraudulently and
falsely represented to them that profile No. 3 contained the
located and fixed line of the company for said road; that the
acts of the defendants and the chief engineer of the com-
pany show a fraudulent understanding to cheat and defraud
the railway company and the plaintiff, in allowing an incom-
petent and negligent staff of engineers to direct and control
plaintiff's work, and, as directed by defendant Brooks and the
chief engineer, in allowing the corrupt change in the location
of the line of the road, to increase defendants' profits, to the
injury and damage of the plaintiff.

That profile No. 3 was the—

"Center-stake line of the preliminary survey, and gave the
cuts and fills in cubic yards, marked thereon in figures. It
showed the quantity and distance of earth to be moved from
the cuts to the fills, by stations, numbered at each 100 feet.

It was given to the subcontractors, and declared to them to represent the located line of the road and the earth-work in quantity and distance to be moved."

That the contract has not been lived up to on the part of the defendants, but repudiated by them; that the defendants had not only received the pay for plaintiff's labor from the company, but that a large portion of it was profits, and justly belonged to plaintiff until his claim should be fully paid; that the line of the railway, as actually constructed at different places, was from 150 to 400 feet from the line found upon profile No. 3, the change thus made greatly increasing the earth-work, and the distance which the plaintiff had to haul the dirt, in grading and filling sink-holes; that, at the end of 16 miles of plaintiff's work, less than half a mile was built on the line shown upon profile No. 3.

That the engineer did not honestly make his estimates of the plaintiff's work, but made them for the defendants only, under the contract; and that the fraudulent conduct of such engineer in the location of the line, and in the matter of such statements, was to the knowledge, approval, and advantage of the defendants, and to the injury and loss of the plaintiff.

That the plaintiff suffered greatly from errors of engineers in their not furnishing estimates, and in delays in securing right of way, and was put to great trouble and expense, etc.; and finally claimed that there was a balance due him of at least $27,562.74, with interest for about three years added; that if the contract price was applied to all the work with the overhaul added, the balance then due would be $26,879-.27.

Such was the claim of the plaintiff, and it was made under a declaration containing the common counts, with the following bill of particulars and notice added.

The following is the bill of particulars:

"GENTLEMEN: In reply to your demand for a bill of par-

ticulars of the plaintiffs' demand for which this action is brought, please notice:

"1. That this demand is for damages and for compensation wholly based on their non-performance by the defendants of their written subcontract and specifications with the plaintiffs, of date December 1, 1882, concerning certain railroad construction in said subcontract and specifications recited. This subcontract and specifications the plaintiffs, on their part, claim to have in all respects observed and performed, to the acceptance of the said defendants and the Michigan Air Line Railroad Company (for whom said railroad construction was to be and was done), prior to the commencement of this action.

"2. That as to the amounts and dates of the labor done and materials furnished by the plaintiffs in so fully performing said subcontract and specifications, such as earth-work done, materials furnished, acres cleared and grubbed, and the other like railroad construction work provided for, this is a matter to be declared by the said railway company's engineer's measurement and computation, and furnished to the plaintiffs, and so not in their power to itemize and declare.

"3. That such engineer's measurements and computation were, in fact, furnished to said defendants as original contractors, and by them after demand, long prior to the commencement of this suit, refused to the plaintiffs.

"NORRIS & UHL,

Attorneys for Plaintiffs."

"*July* 30, 1884.

The following is the notice:

"GENTLEMEN: From the affidavit of the plaintiff served on you, and proceedings had, in this cause, in *mandamus* in June last, you have already had notice that the plaintiff claimed that on the trial of this cause (now set for 17th proximo) one of the questions to be tried and decided in this cause is to what extent and how far the engineer's monthly and final estimate called for by the contract (a copy given in said affidavit as 'Exhibit A') is conclusive in fixing the amount of plaintiff's work and labor; that this question also involves in that regard the capacity and character, good faith and honesty, and the fraudulent conduct and corruption, of the engineer making such estimate; that affiant (plaintiff) is prepared, on the trial of this cause by jury, to give evidence tending to show an absence of capacity, character,

good faith, or honesty in the estimates of the engineer, who is reported to have made estimates (for the defendants only) of the plaintiff's work under said contract, as also such engineer's fraudulent conduct and corruption in the matter of such estimates, to the knowledge, approval, and advantage of the defendants, and to the injury and loss of the plaintiff.

"Now, by way of again and more fully calling your attention to this notice, and as further specification of plaintiff's claim herein, you will please take notice that on the trial of this cause the plaintiff will (by permission and under direction of the court) offer and give in evidence tending to show:

"1. Mistakes of fact in the work of the engineers in laying out, directing, and measuring plaintiff's work and labor.

"2. Combination and corruption between defendants and the engineers engaged in locating, laying out, overseeing, and measuring plaintiff's work and labor, operating to defraud the plaintiff of his just rights.

"3. Fraudulent conduct of the defendants in this:

"Entering into secret and corrupt relations and agreement with the chief engineer, Henry Yates, whereby his interest was expressly or impliedly enlisted, to favor in his official action, as general and superior engineer and umpire, the defendants, and then fraudulently procuring from plaintiff (in ignorance of such relations) an agreement to be bound by such official action as general and superior engineer and umpire, to his great loss and injury.

"4. Total incapacity of said engineers to rightfully discharge their duties as umpires and engineers, by reason of habitual intoxication while in the discharge of their official duties, to the loss of and injury of plaintiff

"NORRIS & UHL, Plaintiff's Attorneys.

"*January* 28, 1887."

The claim of the defendants before the jury, and their theory, was that the work done by plaintiff and Mr. Palmer was all done under the contract, which was made and entered into with them by the defendants in the utmost good faith, and which was carried out with plaintiff and with Palmer in like good faith, according to its true construction, by said defendants, and that they, the said defendants, have paid the said plaintiff, not only all that they ever owed him for said work and materials, but have actually overpaid him

several thousand dollars, and for which they were entitled to have judgment.

That the company had, and consequently the defendants had, a right, under the contract with the plaintiff and Mr. Palmer, to change and vary the line of said railroad from that mentioned in profile No. 3, as they did, and have the work done upon it by plaintiff, under their contract with plaintiff and Palmer, without any extra charge, and at prices mentioned in the contract; and that such line was not changed or varied any more than was necessary—

" For the reduction of the projected line, run by angles, to a practical working line, running in curves, straightening the line, and such shifting of it as to equalize cuts and fills, and avoid sinking marshes," etc.

That plaintiff and Palmer, before they did the work, had knowledge of this, and that they never made any claim for extra work or damages, or refused to do the work for the contract price, under the contract; that, in any event, the change of line made was not within the control of defendants, and that defendants had nothing to do with it; that profiles of the new line were furnished to Palmer as fast as staked out, and no complaint was ever made of it, and that defendants paid the plaintiff $90,211.37.

Such was substantially the claim of the defendants.

Upon the foregoing theories the cause was tried, with the result above stated. There were no special findings asked for by either side, and none were made by the jury, and the verdict was general and for the plaintiff.

The record and briefs contain nearly 2,000 pages. We cannot consider each of the errors assigned separately in this opinion, nor is it deemed necessary in making a proper disposition of the case.

The first question raised of importance is, were the pleadings sufficient to admit all of the plaintiff's proofs? They

are all stated above on the part of the plaintiff.   We think they were.

It is claimed on the part of the defendants—

1. That the proof of frauds, deceits, and corruption mentioned in the plaintiff's notice cannot be made under the declaration; that, to avail himself of the frauds mentioned, the plaintiff's declaration must be based upon the fraud, and claimed under a special count and in a different form of action.

2. That in this case there was a special contract, and that, in order to recover for a breach of it, a special count is necessary, setting forth the contract and assigning the breach, and that an action will not lie on the common counts when proof of the breach is necessary to entitle the plaintiff to recover.

3. That a party cannot avoid the necessity, either in his declaration or in his proofs, when he waives the tort and brings *assumpsit,* to present all the facts and circumstances showing the fraud, and in such case a special count is not only required, but must be proved before a recovery can be had.

We are not prepared to adopt the first proposition of the defendants' counsel.   And, so far as the second is concerned, we do not think it arises in this case; and the same is true of the third, and we forbear discussing them.

It is well settled that where the contract between two parties is executed by the plaintiff, and nothing remains but payment to be made by the defendant, the former may bring his action, and declare upon the common counts.   So where the plaintiff is at liberty to treat the contract as at an end, though only partly performed, and where the plaintiff did not perform in the manner or time agreed upon in the contract, and what he did was beneficial to the defendant, and he has accepted it, in these cases the plaintiff may declare on the common counts.   2 Greenl. Ev. § 104; *Dickinson v. Dustin,* 21 Mich. 561; *Wildey v. School-dist.,* 25 Id. 419; *Begole v. McKenzie,* 26 Id. 470; *Crane v. Grassman,* 27 Id. 443; *McQueen v. Gamble,* 33 Id. 344; *Blackwood v. Brown,* 34

Id. 4; *Chapman v. Dease,* Id. 375; *Mitchell v. Scott,* 41 Id.
108 (1 N. W. Rep. 968); *Curtis v. Railway Co.,* 32 Id. 291;
*Hayward v. Leonard,* 7 Pick. 181; *Andre v. Hardin,* 32
Mich. 324; *Clark v. Gilbert,* 32 Barb. 576; *Jewell v.
Schroeppel,* 4 Cow. 564.

In this case there was testimony tending to prove every
branch of the plaintiff's theory of the case, as well as the
theory of the defendants. On the facts and on these theories
the case went to the jury in an equitable action, one favored
by courts, because of the principles which govern it in
securing the rights of parties, and it is our duty to support the
judgment unless it shall be clearly made to appear that injus-
tice will be done in so doing. Technical nicety in pleading
or practice should be overlooked, if it is manifest that jus-
tice has been done between the parties.

This is not a case in *assumpsit,* based upon a tort which
has been waived. Neither is it an action to recover under a
contract based upon the fraud of the defendants. It is,
however, an action brought by the plaintiff to recover for
work and labor and materials furnished for and to the
defendants, and which the plaintiff was induced to so do and
furnish by reason of a certain contract made by the parties,
but which was not binding upon the plaintiff because of the
frauds, mistakes, deceits, and corruption of the defendants,
and those to whom its execution was committed, on their
part, and in behalf of the company. He claims that he per-
formed the work and labor, and furnished the materials
necessary, mentioned in said contract, to and for said defend-
ants, and that by reason of said fraud and deceptions used
by said defendants, and those representing them, he did a
large amount of work, and furnished materials for the same,
in addition to those mentioned in said contract, and he now
seeks to recover for all his work and labor done and materials
furnished for said defendants.

Clearly, upon the facts as the plaintiff claims them, the

action of *assumpsit* upon the common counts will lie. Abb. Tr. Ev. 361; *Shulters v. Searls,* 48 Mich. 550 (12 N. W. Rep. 697); *Boyce v. Martin,* 46 Id. 239 (9 N. W. Rep. 265); *McGraw v. Sturgeon,* 29 Id. 428; *Fletcher v. Bradford,* 45 Id. 349 (7 N. W. Rep. 905); *Allen v. McKibbin,* 5 Id. 449; *Engle v. Campbell,* 42 Id. 565 (4 N. W. Rep. 301); *Merrill v. Railroad Co.,* 16 Wend. 586; *Fuller v. Rice,* 52 Mich. 435 (18 N. W. Rep. 204); *Berringer v. Cobb,* 58 Id. 557 (25 N. W. Rep. 491). And in such a case the fraudulent contract, or the fraudulent execution of it on the part of defendants, leading to the performance of the additional work and labor claimed for by plaintiff, he would not be bound to the prices stated in the contract, but would be entitled to whatever such service was reasonably worth.

There can be no doubt, I apprehend, but that *assumpsit* on the common counts would lie for the plaintiff's services and materials furnished, even though the contract existed between the parties for them, and they had been rendered and furnished under the contract; but in such case the value of such service would be limited to that specified in the contract, and the plaintiff would have a right to make any competent proof of the amount and value of such service.

The question of fraud in the making and executing of this contract was left to the jury, and we think properly so, and their verdict is against the defendants. If there was any evidence of it, we cannot disturb the verdict, however much we may differ from the conclusion reached by the jury. We must accept their finding as correct, and, with this fact proved in the case, say what error has been committed, if any. If there had been any fraud in the contract, and the work had all been done under the same, and the parties defendant had failed to perform their part according to its terms, the plaintiff could have recovered so much as the work was worth in an action on the common counts. The evidence of the

plaintiff was put in under these several views of the case. It was impossible for the parties to know which of them the jury might adopt. The plaintiff had the right to place all his proofs before them, and this he did, with the result which followed.

After a careful examination of the proceedings at the circuit in receiving such proofs, we have discovered no error so far prejudicial to the rights of the defendants as to warrant us in reversing the judgment upon that ground.

This disposes of the first 35 errors assigned, also of defendants' requests numbered 7, 10, 12, 13, 14, and 15. Before leaving this branch of the case, however, we wish to notice a few of these alleged errors. The testimony taken before James F. Joy, in an arbitration had before him of the amount the defendants should receive from the company for road construction under the original contract, and which included the portion built by the plaintiff, or rather the work he did for the defendants, was admitted in evidence, against the objection of defendants' counsel, as was also the original contract between the company and defendants for the construction of the road.

We think this evidence was properly admitted under the stipulation of counsel made at an early stage of the case. It is true that certain objections, and the right to make them to the testimony when offered, were reserved, but we think the other provisions of the stipulation are such as to make the testimony admissible, and it was both competent and material, and there was no error committed in admitting it. The contract admitted was referred to in the contract between the parties.

Under the eighteenth assignment of error the circuit judge allowed the witness Dauby to state what the earth-work on the original surveyed line would be worth per cubic yard. No ground is stated for the objection, except that it is impossible for any man to go over there three years after the work was

done and tell what it is worth. We do not think there was any error in admitting the testimony. Certainly the witness could give his opinion, and this he was allowed to do. It was clearly competent and material, under the view that plaintiff was entitled to recover on the *quantum meruit,* and this will suffice as to several other objections to questions put relating to the same subject-matter. It must be remembered the plaintiff was permitted to give testimony to support all of his theories of his right to recover. If the plaintiff satisfied the jury that the defendants were guilty of the fraud alleged, then the plaintiff might recover for all that he did and all that he furnished, and would not be limited as to the value fixed by the contract. Nor would he be precluded from so reasoning because he had received pay on the monthly statements made down to and including August of 1883. Such statements were claimed to be, by the plaintiff, a part of the fraudulent execution of the contract, and the plaintiff had a right to go to the jury with his theory and with the evidence to support it.

Errors 20 and 21 relate to what witness Dauby said in regard to his taking the contract without allowance for the overhaul, and whether or not he would consider it prudent to make the contract without such allowance, and as to what he would do if he had faith in the contractor. This was not strictly proper testimony in the case, but we think it was not of a character to prejudice the rights of defendants. Taken altogether, it may be questionable whether it did not make quite as much for the defendants as for the plaintiff.

There was no error in allowing the plaintiff to state a conversation between himself and Henry Yates, the chief engineer of the company, not in the presence of the defendants. It related to that part of the work over which the engineer had complete control, as was conceded by all, and in the performance of which he acted for the defendants, and

they therefore cannot be heard to make the complaint they do in regard to this testimony.

We are of opinion the court did not err in refusing to strike out all the testimony of plaintiff on the question of fraud, for the reason there was sufficient upon that subject to be submitted to the jury; and, such being the case, the court did not err in refusing to strike out the other testimony in the case when requested so to do by defendants' counsel, which became competent and relevant with the testimony relating to fraud retained.

We hardly think the construction placed upon the bill of particulars furnished by the plaintiff, by counsel for defendants, the proper one. They say this—

"Bill of particulars advised the defendants that the action was not for non-performance of the written contract by defendants;" and they insist "that all the rights of these parties are to be determined by their contract relations, and that the plaintiff has proceeded upon that theory."

We take a different view of it, and the theory upon which the plaintiff tried his case. The plaintiff says in his bill of particulars that "his demand is for damages and for compensation wholly based on defendants' non-performance of their written subcontract and specifications with the plaintiff," and when he gave notice of the non-performance he informed the defendants that such non-performance consisted of the frauds practiced upon the plaintiff at its inception by them, and in its execution practiced by them and others with whom they had co-operated and confederated, and that he should claim the rights the law gave him upon his making proof of the facts and circumstances upon the trial. There is a great difference between an "action for non-performance of a written contract by defendants" and an action to recover compensation for work done and materials furnished to defendants, by reason of a fraudulent con-

tract made by them, and a failure to perform by a fraudulent execution of it. The latter is what is stated in the plaintiff's bill of particulars.

It was under a declaration on the common counts, with such a bill of particulars accompanying; and notice that on the trial the circumstances of the fraud would be proved and testimony given to sustain every theory under which the plaintiff could claim to recover, and which was met at every point and by every defense that could be made by able, learned, and vigilant counsel on the part of defendants, that the learned circuit judge gave the case to the jury in a charge covering all the points in the case, and to which are aimed at different portions 16 assignments of error. There are also 10 exceptions to the refusals to charge. These assignments and exceptions remain to be considered.

The first exception to the charge is that the plaintiff having received no estimates, and none having been made, after the month of August, as required by contract, the plaintiff would not be bound by the estimates of the engineer exclusively; that such was not a fulfillment of the contract on the part of defendants; and that plaintiff could recover for what he had done. This we think was proper. What the court said in regard to the company's contract was of no consequence, and could have injured neither party. The neglect to furnish estimates was a breach of the contract on the part of the defendants, and the failure to furnish the final estimate, which was to include all the work, would be such a failure to perform on the part of defendants as would give to the plaintiff all the rights accorded to him in the charge complained of; he could recover what his labor and materials were worth.

He who claims the benefit of a contract giving him such discretionary power and containing such arbitrary and despotic provisions, and asks to have them enforced, must first himself show that he has performed such contract on his part

70 MICH—30.

to the letter, and, failing so to do, he can claim nothing but exact justice in his dealings with the other party, and it is the duty of the court in such case to see to it that this rule is enforced. The contract relied on by the defendants is of that character, and must be subject to this rule.

We think the learned circuit judge was right when he charged the jury that,—

" As a matter of justice between the parties, the plaintiff ought to have full pay for all the earth that he moved, and, on the other hand, the defendants ought not to pay for any earth that was not moved; and it is your duty, therefore, to ascertain to the best of your judgment what the truth is in regard to the amount of earth that was removed, and to judge of it based upon the evidence or testimony that is given to you here."

We think also the following was properly given by the circuit judge:

" But it is claimed in this case that the plaintiff was defrauded by the defendants in entering into this contract, and to such an extent, as to vitiate it,—to excuse him from performing the work at the contract price; and that he has the right to recover what the work was worth beyond the contract price, if there was any excess beyond that. If it is proved in this case that he was so defrauded, and that the defendants in this case were parties to that fraud, and it has been to the injury in any way of the plaintiff in this case, why then, as a matter of course, the prices would be taken out of those mentioned in the contract, and he would be entitled to be allowed such sum as the work was reasonably worth, without reference to the prices mentioned in the contract."

The following was also excepted to by defendants' counsel:

" If you should be of opinion that there was a fraud practiced,—such a fraud as has been explained to you,—then the latter clause, or a portion of the latter clause, of the seventh request of plaintiff, would be correct,—that plaintiff may lawfully disregard the written contract so far as to recover upon the common count, *quantum valebant*, the actual amount of the account at its actual value, though the amount exceeded the engineer's statement, and the actual

value exceeded the contract price. Of course parties cannot, as I stated before, be controlled by a contract that they have been deceived into making to their injury, and they will be entitled to recover such an amount as they are honestly and justly entitled to."

One of the largest items in the amount plaintiff claimed was for overhaul, and upon the subject the court in his charge said:

"If there was any overhaul, and the party is entitled to recover for it, why that, as a matter of course, would form an element in the amount that you should find the plaintiff was justly entitled to under the contract, with fraud existing so as to enable you to give ·him a greater amount than the contract price.   *   *   *   If there was no overhaul,—if there was substantially no overhaul, nothing that was a serious hindrance or damage to the plaintiff in this case,—why then, as a matter of course, that question would be out of the case; and if there was such an overhaul as he would not have been compelled to do under the contract as made on profile No. 3, and they had no right to change the line because it was a fraud in the inception of the contract itself, then, as a matter of course, you will allow such sum for that as you think the plaintiff would be entitled to; but if there was no overhaul, or if there was no fraud on the part of the defendants here, such as will justify you in finding that to be true, and there was a right to change the line, he cannot recover anything on account of that."

The foregoing charges were all excepted to in the record, but we fail to find any error in them, or any reason why they were not proper to be given in the case.

In addition to the above, the following charges were given by the circuit judge as requested by counsel for defendants:

"The plaintiff in this case insists that, by reason of the fraudulent acts and conduct of the defendants, he is not bound by the contract price for work done under the contract, but may recover whatever sum he can show to be the value of the work done by him, or by Palmer and Bush. Fraud is not a thing to be presumed; it must be proved by the party making the charge.   It is not to be inferred from mere suspicion or doubtful acts or circumstances, but must be

established by competent testimony to the satisfaction of the jury.

"The defendants in this action are only responsible for fraud committed by themselves or by their procurement or knowledge and consent. Any fraud, active or constructive, on the part of the chief or division engineer, not participated in, procured, or instigated by defendants, is not chargeable to the latter, and they cannot be held responsible for the same.

"A change of the line of the railway by the chief or the division engineer after contracts were let to Palmer and Bush, although it might increase the amount of the work and the cost of the same, yet the defendants will not be liable for such additional cost, unless such change was fraudulently made, and the defendants fraudulently combined or conspired with the party making such to have the line changed for a fraudulent purpose to the plaintiff's injury.

"If the jury should find that there was overhaul on the constructed line in excess of what there would have been on the line shown by profile 3, still, unless such overhaul was occasioned by the fraud of the defendants to the injury of Palmer and Bush, the plaintiff cannot recover the contract price for such overhaul. If such overhaul was created by the act of the chief engineer or the division engineer, without the fraud of defendants, then the defendants are not liable, unless the same was procured by their fraud."

After a careful perusal of the charge, we have failed to discover any error therein for which the judgment in this case should be reversed. And we further think that all was given of the requests of the defendants necessary or proper in the case, and that the judgment should be affirmed.

CHAMPLIN, CAMPBELL, and LONG, JJ., concurred. MORSE, J., did not sit.