TAEPKE *v.* GLOBE FINANCE CORP.

1. CORPORATIONS — STOCK SUBSCRIPTION AGREEMENT — FRAUD — RESCISSION—TENDER—PARTIES.

   Tender or redelivery of stock received by plaintiff is prerequisite to action based on rescission of stock subscription agreement for claimed fraudulent representations and in such action corporation is sole defendant.

2. FRAUD—MEASURE OF DAMAGES—PARTIES.

In action for damages for fraud in stock subscription where plaintiff keeps stock, measure of damages is difference in value between what he paid for and what he received and action lies against all who participated in defrauding him.

3. SAME—TENDER—ACTION.

Plaintiff in action for fraud in stock subscription agreement is not required to tender or redeliver worthless stock before action to recover purchase price, but proof of no value must be submitted to excuse tender.

4. SAME—PROMISSORY REPRESENTATIONS.

Promissory representations to deliver stock in industrial bank which plaintiff knew might not be organized *held*, insufficient to establish fraud.

5. PLEADING—SPECIAL CONTRACT—ASSUMPSIT—COMMON COUNTS.

Failure of performance of special contract to deliver certain corporate stock must be specially pleaded and recovery for damages therefor may not be had under common counts in assumpsit.

•

Appeal from Wayne; George (Fred W.), J., presiding. Submitted October 10, 1933. (Docket No. 111, Calendar No. 37,446.) Decided December 5, 1933.

Action by Charles F. Taepke against Globe Finance Corporation, a Michigan corporation, for damages for breach of stock subscription agreement and on the common counts. Judgment for plaintiff. Defendant appeals. Reversed, and judgment directed for defendant.

*Charles L. Brown*, for plaintiff.

*Wynn, Zinn & Freimuth*, for defendant.

POTTER, J. Plaintiff sued defendant to recover damages in the sum of $826.88. From a judgment for plaintiff, defendant appeals. November 19,

1928, plaintiff subscribed for 300 shares of Globe Finance Corporation stock at $12.50 a share, payable $750 down and $3,000 in 90 days. Both payments to be made were evidenced by promissory notes. December 8, 1928, plaintiff paid the $750 note. A so-called stockholders' prior-rights certificate of the Globe Finance Corporation was issued and delivered to plaintiff, giving him the right to purchase 600 shares or any part thereof of defendant's stock at $12.50 a share. April 25, 1929, plaintiff wrote defendant he had purchased 600 shares of its stock and received a "prior-rights certificate" but had not received the stock certificate. April 29, 1929, defendant wrote plaintiff suggesting he get in touch with one Mr. Madill through whom he had purchased the stock and who had been president of defendant corporation. June 11, 1929, defendant sent plaintiff 60 shares of its stock, the amount paid for, with the understanding Madill had returned plaintiff's notes and subscription for the full amount of stock. The $3,000 note of plaintiff was returned by defendant to him. November 17, 1930, this suit was commenced.

Plaintiff alleges fraud in the representations and solicitations made to him, claiming the stock subscribed for was to be exchanged for industrial bank stock immediately upon the receipt of a charter by an industrial bank, and it was only upon this representation by Mr. Madill, defendant's then president and authorized agent, plaintiff's subscription agreement was signed. The declaration also contains the common counts in assumpsit.

The certificate for 60 shares of defendant's stock was not returned or tendered by plaintiff to defendant prior to or during the trial, nor was the $3,000 note by plaintiff to defendant which had been rede-

livered by defendant to plaintiff returned to or paid to defendant. The transaction here involved relates only to the 60 shares of defendant's stock and the $750 note and its payment.

If the representations made were fraudulent, as claimed by plaintiff, when he discovered the fraud, he could rescind the purchase of the 60 shares of defendant's stock and sue to recover what he had paid therefor. In order to effect such rescission, he should have redelivered or tendered back the 60 shares of stock. This sort of suit could only be maintained upon the theory defendant received money from plaintiff to which he was entitled; that plaintiff's money was paid without proper consideration. Such suit would be against the corporation alone. Plaintiff did not rescind. He did not deliver or tender back to defendant, the 60 shares of its stock. He had it at the time of the commencement of suit and, so far as the record shows, still has it. He does not plead, nor seek to prove rescission. He cannot keep the stock and at the same time sue and recover what he paid for it. He cannot have both the stock purchased and the consideration paid therefor. He cannot blow hot and cold; cannot both approbate and reprobate. No suit, based upon rescission, will lie.

Plaintiff might keep the stock and maintain a suit for damages. He could, if defrauded and damaged by such fraud, sue to recover the difference in value between what he bought and paid for and what he received; what he should have received and what he actually received. Such suit would lie against any and all persons who participated in the fraud; upon the theory of recovering damages for wrongful injury to plaintiff.

Plaintiff does not seek to do this. No such claim is made. There is no proof of the value of the stock received; no proof of what it would have been worth had the alleged false representations been true; no proof of damages and no basis for recovery upon this theory.

If what plaintiff received was actually worthless when he received it, redelivery or tender back might be unnecessary. One is not required to do useless things; to tender back what is of no value. But here there is no proof of the value of the stock plaintiff received. For aught that appears here it may have been worth as much or more than he paid for it, at the time he received it.

The allegations of fraud in the declaration are promissory, relating to a possible future exchange of the stock purchased for stock expected to be issued in an industrial bank which it was hoped might be incorporated in the future, but which plaintiff knew might not be organized. The proof under the circumstances is insufficient to establish that plaintiff was deceived, misled or defrauded to his injury.

May the judgment be sustained under the common counts in assumpsit? The contract involved was a special contract. It was not, as plaintiff claims, performed. It was a contract on defendant's part to deliver, as claimed by plaintiff, certain corporate stock. Plaintiff's right to recover, if any, arises from the failure of defendant to deliver the property contracted to be delivered by it. Such a failure to deliver on the part of defendant must be specially pleaded. · Where a contract has been fully performed and nothing 'remains but the payment in money of the contract price, recovery may be had

under the common counts in assumpsit. *Phippen* v. *Morehouse,* 50 Mich. 537; *Thomas* v. *Caulkett,* 57 Mich. 392 (58 Am. Rep. 369); *Shaw* v. *Bradley,* 59 Mich. 199; *Bush* v. *Brooks,* 70 Mich. 446; *Flint & P. M. R. Co.* v. *Wayne Circuit Judge,* 108 Mich. 80.

But where, as in this case, recovery is sought for a breach of a special contract, such contract, the breach thereof and the resulting damages must be specially pleaded. *Flint & P. M. R. Co.* v. *Wayne Circuit Judge, supra.*

"When a special contract has been wholly performed by one of the parties to it, and the other party can only perform his part by the payment of money, the money thus due can be recovered upon the common counts in assumpsit.

"But when the contract on the part of defendant is not to pay money, but to deliver to the plaintiff specified articles of property, the right of the plaintiff to recover the money arises, not from the performance of the contract on his part, but from the failure of the defendant to deliver the property; consequently such failure must be specially pleaded." *Nugent* v. *Teachout,* 67 Mich. 571.

No recovery may be had under the common counts in assumpsit.

Judgment reversed and judgment directed for defendant, with costs.

McDonald, C. J., and Weadock, Sharpe, North, Fead, Wiest, and Butzel, JJ., concurred.